Ephrim McCOY, Appellant,

v.

UNITED STATES of America, Appellee.

Ephrim McCOY, Appellee,

v.

UNITED STATES of America,
Appellant.

Nos. 81–2093, 81–2242.

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1982.

Decided Aug. 25, 1982.

Jeffrey A. Breit, Norfolk, Va. (Breit, Rutter & Montagna, Norfolk, Va., on brief), for appellant.

James A. Metcalfe, Asst. U. S. Atty., Norfolk, Va. (Elsie L. Munsell, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before BUTZNER, PHILLIPS and CHAPMAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge.

These cross-appeals concern two separate "slip-and-fall" accidents a seaman, Ephrim

McCoy, sustained in August 1979, and October 1979, respectively, while aboard the U.S.N.S. Potomac, owned by the United States. We affirm the finding of liability for the August accident, but reverse the judgment of no liability for the October accident.

I

Ephrim McCoy joined the Potomac in July 1979 as a QMED charged with maintaining the turbines and fans in the engine rooms. One of the machines that McCoy maintained was the forced draft fan. For about a month preceding August 18, 1979, the fan area had leaked a large amount of oil and water. On that day, as he was pouring oil to service the machinery, McCoy slipped and fell on his shoulder. He reported the accident to the chief mate and continued to work with some pain.

On October 18, 1979, officers ordered McCoy to repair a burst fuel oil line. To do so, McCoy had to lie down in the oily bilge water. After inspecting the damage, he asked an assistant engineer sent to assist him for some equipment. The engineer did not know where the equipment was, so McCoy had to get out of the oil and go across the floor, dripping oil as he did so. While stepping back into the bilge, he slipped and struck his shoulder again. McCoy continued to work with increasing pain until December 7, when a physician in England declared him unfit for duty. He was shipped back to Norfolk and declared disabled until May 30, 1980. McCoy collected all the pay he had earned and lost wages through May 30, and received his maintenance and cure.

McCoy filed suit, however, under general maritime law and the Jones Act, 46 U.S.C. § 688, for pain and suffering from the accidents and from the overtime he lost in the period from December 7, 1979 through May 30, 1981. The district court found that the August oil and water leak was an unseaworthy condition. It noted that the government had not shown that McCoy had any alternative but to go through the oil to work on the fan, and therefore concluded

that McCoy could not be held to any contributory negligence. The court noted that the unseaworthy condition was open and obvious and that, if McCoy could be held to contributory negligence, the court would find the ship and McCoy to be equally negligent.

The district court also found the October burst fuel line to be an unseaworthy condition, but denied McCoy's liability claim for the resultant fall. The court specifically found that

> it was the oil that the plaintiff got on his clothes and on his shoes that caused him to slip and fall and that oil was brought about by his immersion in the oily bilge while he was doing the work that he was instructed to do to cure the unseaworthy condition of the broken fuel line.

Citing Bruszewski v. Isthmian S.S. Co., 163 F.2d 720 (3d Cir. 1947), Byars v. Moore-McCormack Lines, 155 F.2d 587 (2d Cir. 1946), and Filipek v. Moore-McCormack Lines, 258 F.2d 734 (2d Cir. 1958), the court determined that when McCoy was ordered to fix the unseaworthy condition, he created a situation from which he fell "whether by any fault on his part or not," and that the ship could not be held liable.

The court then awarded $1,000 in damages for the August fall, but nothing for the October injury. McCoy appealed the denial of liability for the October accident, and the government cross-appealed the refusal to apply contributory negligence in the August accident.

II

Assumption of the risk is no defense to a seaman's claims. See Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939). Contributory negligence, applied on a comparative basis, can be used to reduce a shipowner's liability, but the basic duty of the seaman is "to do the work assigned, not to find the safest method of work," Spinks v. Chevron Oil Co., 507 F.2d 216, 223 (5th Cir. 1975). Accord, Ballwanz v. Isthmian Lines, Inc., 319 F.2d 457, 462 (4th Cir. 1963).

We have consistently held that a seaman cannot be faulted for recognizing his job is dangerous and doing it anyway, unless he deliberately spurns a safe alternative provided him. *See Sessler v. Allied Towing Corp.,* 538 F.2d.630 (4th Cir. 1976); *Smith v. United States,* 336 F.2d 165 (4th Cir. 1964). The burden of showing that a safe alternative existed, as part of the affirmative comparative negligence defense, rests with the shipowner. *See Mason v. Mathiasen Tanker Industries, Inc.,* 298 F.2d 28, 32 (4th Cir. 1962).

Applying these principles to the case at hand, we determine that McCoy has not been shown to have been contributorily negligent in respect of either accident and therefore should fully recover for his injuries.

### A

We do not find clearly erroneous the district court's finding that the August oil and water spill in the forced draft fan area caused an unseaworthy condition. Nor do we find erroneous the court's finding that the government failed to carry its burden of showing that McCoy had an alternative to walking through the oil and water to service the fan. The court noted that the unseaworthy condition was open and obvious and speculated that McCoy could have mopped up the spill or requested help, but realized that the government had not presented any evidence that such alternatives were in fact available to McCoy.

It is irrelevant that the unseaworthy condition was obvious to McCoy unless it was shown that he spurned safe alternatives. McCoy's duty was to maintain the fans, and he cannot be held to have breached this duty simply by recognizing the job was dangerous.

We therefore affirm the judgment that the government is fully liable for the August accident.

### B

The same principles lead us to conclude that the district court erred as a matter of law in failing to conclude, on the facts as found and those undisputed, that the government was liable as well for the October accident. We see no principled distinction in the fact that on that occasion McCoy was ordered to repair an unseaworthy condition. Whether faced with repairing an unseaworthy condition (as in October), or being forced to surmount an unseaworthy condition to carry out his regular duties (as in August), he cannot be held to fault for attempting to carry out his orders. Nor is the ship made immune because part of McCoy's duties include cleaning oil spills.

The cases on which the district court relied do not suggest a different result. In each, a shipowner hired an outside contractor specifically to repair an unseaworthy condition, and the court found the assumption of risk defense applicable. Employees of such a contractor, hired for a single operation or function, are in a far different position than a general seaman who, as part of his duties, is ordered to repair an unseaworthy condition. If the outside contractor exception were expanded to seamen whose jobs entail fixing dangerous conditions (which presumably most seamen on occasion must do), the general inapplicability of the assumption of risk defense to maritime law would be undercut in these situations. *See Price v. Mosler,* 483 F.2d 275, 278 n.2 (5th Cir. 1973).[1]

---

1. The only appellate case the government cites where a seaman was denied recovery while repairing an unseaworthy condition is *Spinks v. Chevron Oil Co.,* 507 F.2d 216 (5th Cir. 1975). There, the seaman's regular job was to operate a machine to clean up oil sprayed on the deck of a drilling barge, and. he slipped. on some detergent leaking from the machine. The court upheld the district court's determination that the soapy condition was not itself an unseaworthy condition, pointing out that it was used to correct a previous unseaworthy condition and that the seaman's ordinary work was to apply the soapy solution. The court reversed, however, the district court's conclusion that the seaman was solely responsible for the accident and remanded for a determination of comparative negligence. Thus, the court did not determine that the shipowner would not have been liable if the seaman had slipped on the oil while attempting to clean it up. To the extent *Spinks* suggests more broadly that a shipowner can

The government concedes that the burst fuel line created an unseaworthy condition. Nothing in this record indicates that McCoy attempted to repair the fuel line in anything but a prudent and seamanlike manner, or that he had any alternative to dripping oil on the floor as he got out of the bilge. The government therefore failed its burden of showing contributory negligence, and should have been held fully liable for McCoy's October accident.[2]

### III

Since the district court did not consider the October accident in assessing damages, we remand for a reconsideration of damages.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

avoid liability by ordering a seaman to repair an unseaworthy condition, we decline to follow it.

2. We therefore need not reach McCoy's argument that the government is independently lia-

ble for the unseaworthy condition created by the incompetence of the assistant engineer sent to assist McCoy in repairing the burst fuel line.