David BLEVINS, Appellee,

v.

UNITED STATES of America,
Appellant.

David BLEVINS, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 84–1729, 84–1732.

United States Court of Appeals,
Fourth Circuit.

Argued April 3, 1985.

Decided July 29, 1985.

Paul D. Bekman, Daniel S. Katz, Baltimore, Md. (Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, Md., on brief), for appellant/cross-appellee.

Allen Van Emmerik, Washington, D.C. (J. Frederick Motz, U.S. Atty., Elizabeth H. Trimble, Asst. U.S. Atty., Baltimore, Md., Philip B. Barnes, Third Year Law Student, Stephen Immelt, Baltimore, Md., on brief), for appellee/cross-appellant.

Before PHILLIPS, SPROUSE and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

David Blevins sued the United States in admiralty and recovered damages for injuries he suffered on board a United States ship. Both Blevins and the United States appeal aspects of the district court's judgment. Blevins contends that the court erred by reducing the damage award to reflect comparative negligence, by failing to consider damages for disfigurement, and by refusing to award prejudgment interest. The United States appeals the district court's award of postjudgment interest at the Treasury Bill rate calculated pursuant to 28 U.S.C. § 1961, contending that the applicable rate is found in the Public Vessels Act (PVA), 46 U.S.C. § 782, which incorporates the 4% rate set forth in the Suits in Admiralty Act (SAA), 46 U.S.C.

§ 743. We affirm in all respects except the rate of postjudgment interest awarded; as to that we remand for recomputation of the award at the lower 4% rate contended for by the government.

I

Blevins was injured aboard the USNS SEALIFT MEDITERRANEAN in March 1979. He was 24 years old and on his first voyage at sea. His prior experience consisted of six months of classroom training in marine engineering at the Calhoun MEBA School. In the first six days of his assignment aboard the SEALIFT, Blevins had worked solely on the repair of a diesel generator.

On the day of the injury, Blevins and another engine cadet, Peter Breed, were ordered to obtain a piece of plywood. They went to the storage area and found a stack of plywood measuring four by eight feet chained to the bulkhead. Breed and Blevins positioned themselves at opposite ends of the stack and removed the chains. Blevins then proceeded to walk in front of the stack. Blevins testified that he was moving to the other end to assist Breed in sliding a piece out of the stack; Breed testified that Blevins was in front of the stack to help hold it in place while a piece was removed. In either case Blevins was in front of the stack when Breed attempted to remove a sheet of plywood and caused the stack to shift forward.

Unbeknownst to the two men, the stack of plywood also contained a number of metal plates, each weighing over 1000 pounds. The stack fell forward and pinned Blevins' arm against a pipe. Breed and Blevins attempted to lift the stack, but could not do so. Blevins remained pinned until five or six crew members came to his rescue.

The injury to Blevins' bicep required surgery to remove damaged nerves and muscle tissue. Blevins wore a metal plate in the arm for almost a year. When it was removed, Blevins continued to experience pain and weakness in the arm. The injury left a noticeable scar, which Blevins asserts has affected him emotionally.

The case was tried to the court. The district court concluded that the government was negligent in failing to warn of the danger and in inadequately supervising and manning the task. The court also found Blevins negligent in the manner in which he performed the task and reduced the damage award by 15%. In its initial memorandum of decision, the court awarded both prejudgment interest and post-judgment interest at 4%.

Blevins moved the court to amend its findings to award damages for disfigurement and to calculate the interest at the rate provided in 28 U.S.C. § 1961[1] from October 1, 1982, the effective date of that statute as amended. The government opposed the motion and requested that the prejudgment interest award be eliminated. The court filed an amended memorandum of decision eliminating prejudgment interest, but fixing postjudgment interest at the § 1961 rate as of October 1, 1982. The court declined to amend its finding on damages, stating that it had included disfigurement in its award for pain and suffering. Judgment in accordance was entered and these appeals followed.

## II

We affirm the court's finding that Blevins was contributorily negligent. Blev-

ins contends that the court's finding is actually one of assumption of the risk, which is not a defense in admiralty. *See McCoy v. United States*, 689 F.2d 1196, 1197 (4th Cir.1982) (citing *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939)). Blevins also contends that the court failed to weigh his youth and inexperience. We find no support for either assertion.

In *McCoy* we held that a seaman was not contributorily negligent when he walked through an oily bilge, slipped and fell. To perform his assigned task of repairing a fuel line in the bilge, McCoy had no alternative but to walk in the oil. "[T]he basic duty of a seaman is 'to do the work assigned, not to find the safest method of work.'" *McCoy*, 689 F.2d at 1197, *citing Spinks v. Chevron Oil Co.*, 507 F.2d 216 (5th Cir.1975). A seaman will not be held negligent simply because he realizes that an assigned task is inherently dangerous but nevertheless continues to perform that task. *See Sessler v. Allied Towing Corp.*, 538 F.2d 630 (4th Cir.1976).

Unlike McCoy, Blevins was not faced with an inherently risky task. As the trial court found, he "deliberately placed himself in what he should have realized was an unreasonably dangerous position."

**1.** § 1961. Interest.

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

(b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

(c)(1) This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at a rate established under section 6621 of the Internal Revenue Code of 1954.

(2) Except as otherwise provided in paragraph (1) of this subsection, interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal circuit, at the rate provided in subsection (a) and as provided in subsection (b).

(3) Interest shall be allowed, computed, and paid on judgments of the United States Claims Court only as provided in paragraph (1) of this subsection or in any other provision of law.

(4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

Though he was not responsible for finding the safest method of work, he nevertheless had a duty to act reasonably to protect himself from harm. *See Fontenot v. Teledyne Movible Offshore Inc.*, 714 F.2d 17, 20 (5th Cir.1983). In practical terms, Blevins may have "assumed" the risk that unsecured plywood would fall; in legal terms, he acted negligently by placing himself in a zone of danger that he need not have encountered to get the job done.

Blevins' youth and inexperience were properly considered by the court. In its memorandum of decision, the court noted that "[o]ne should not need any maritime experience to realize that boards leaning against a wall or other vertical object may tilt over and fall when chains securing them are removed." We find this reasoning eminently logical. This case did not involve a hidden danger or an unforeseeable risk flowing from an otherwise obvious danger. *See White v. Rimrock Tidelands, Inc.*, 414 F.2d 1336 (5th Cir.1969) (caustic cleaning fluid aggravated pre-existing injury); *Stevens v. Seacoast Co.*, 414 F.2d 1032 (5th Cir.1969) (dangerous machinery); *Justillian v. Versaggi*, 169 F.Supp. 71 (S.D.Tex.1954) (machinery). Even the greenest seaman must be charged with knowledge of the law of gravity. Therefore, we do not find that the district court held Blevins to an improper standard of care. Accordingly, we affirm the district court's finding that Blevins was 15% comparatively negligent.

### III

■ Blevins contends that the district court failed to consider disfigurement as a component of his damages. The court denied his motion to amend the findings, stating "[t]he court specifically considered the scars on plaintiff's arm and the effect of the scarring and disfigurement on his social life.... Since the element of disfigurement has already been considered in the award, no additional award is appropriate." On appeal, Blevins asserts that disfigurement should be considered a separate basis for compensation beyond pain, suffering, and mental anguish.

While we concede that—in a variety of contexts—some courts have seemingly differentiated disfigurement as such from disfigurement simply as an obvious source of pain, suffering and mental anguish, *see, e.g., Thompson v. National R.R. Passenger Corp.*, 621 F.2d 814, 824 (6th Cir.1980); *Jackson v. United States*, 526 F.Supp. 1149 (E.D.Ark.1981), we think the differentiation sought here would simply be an exercise in semantics. The critical question is whether—however it is taken into account—the condition is included in the total calculus of compensability designed to make the plaintiff whole. *See Downie v. U.S. Lines Co.*, 359 F.2d 344 (3d Cir.1966); *Drayton v. Jiffee Chemical Corp.*, 395 F.Supp. 1081, 1095–97 (N.D.Ohio 1975). Here the district court specifically found that the plaintiff was disfigured and concluded that this condition of disfigurement was properly compensable as an element of damages. We are not shown in what respect this finding and conclusion was not borne out by the total award made. In consequence we cannot hold the factual finding clearly erroneous nor find any legal error in the court's fixing of the damage award simply because the court formally considered the condition in this way rather than separately.

### IV

#### A

■ Blevins asserted federal jurisdiction under the Suits in Admiralty Act and the Public Vessels Act. The SAA allows prejudgment interest to be awarded, whereas the PVA, 46 U.S.C. § 782, provides in pertinent part:

> Such suits shall be subject to and proceed in accordance with the provisions of chapter 20 of this title or any amendment thereof, insofar as the same are not inconsistent herewith, except that no interest shall be allowed on any claim up to the time of the rendition of judgment unless upon a contract expressly stipulating for the payment of interest.

The district court held that the USNS SEALIFT MEDITERRANEAN was a public vessel and that the provision of the PVA precluding judgment interest therefore applies. We agree.

Blevins makes much of the fact that the government described the SEALIFT as a merchant vessel in the pleadings and points to dictum in *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976), that the terms "merchant vessel" and "public vessel" are mutually exclusive. Nevertheless, we cannot declare the district court's finding clearly erroneous. Assuming without deciding that the terms are mutually exclusive,[2] the record supports the finding that this vessel was a public vessel. A vessel owned and operated by the United States "is a public vessel within the purview of the Public Vessels Act ... unless it is engaged in transporting cargo for hire for private shippers." *Petition of Oskar Tiedemann & Co.*, 236 F.Supp. 895, 911 (D.Del. 1964), quoting *Geo. W. Rogers Construction Corp. v. United States*, 118 F.Supp. 927, 934 (S.D.N.Y.1954). The parties stipulated that the SEALIFT was owned and operated by the United States. No evidence in the record suggests that the vessel was chartered for hire or transporting cargo for private shippers. Thus § 782's prohibition against prejudgment interest applies to this action against the United States, and the court correctly so held.

### B

■ The issue concerning the district court's award of postjudgment interest at the rate established under 28 U.S.C. § 1961 raises an arguable question of statutory interpretation. The plain language of the statute provides that interest at the rate specified "shall be allowed on any money judgment in a civil case recovered in a district court." The statute then proceeds in § 1961(c)(1) to exempt internal revenue tax cases from the broad language of § 1961(a). The district court held that Congress' express exemption of tax cases implies that all other cases, including actions against the United States in admiralty, are governed by § 1961(a). Though Blevins musters a plausible argument in support of that proposition, we conclude differently.

The PVA, 46 U.S.C. § 782, which incorporates the interest provision of the SAA, 46 U.S.C. § 743, has been in effect since 1925, long after 28 U.S.C. § 1961 and its predecessor statutes were enacted. The legislative history of § 1961 indicates that Congress enacted the 1982 amendment in an effort to bring uniformity to the allowance of interest on judgments in the district court. *See* S.Rep. No. 97–275, 97th Cong., 2d Sess., *reprinted in* 1982 *U.S.Code Cong. & Ad.News* 11, 21. The purpose of the amendment was to craft a uniform federal rate to supersede the various state law rates then being applied. *See id.* at 22. Comments on the Senate floor, however, also suggest that the new rate was to apply with equal force to all litigants, including the United States, so as to discourage frivolous appeals designed merely to reap the benefit of the difference between prevailing interest rates and the artificially low legal rate. *See* 127 *Cong.Rec.* S14699–

**2.** The conceptual difficulty in this case lies in the overlap between the SAA and the PVA. Until the decision in *THE LAKE MONROE*, 250 U.S. 246, 39 S.Ct. 460, 63 L.Ed. 962 (1919), sovereign immunity precluded suits against United States vessels; the Supreme Court held in *THE LAKE MONROE* that a government vessel employed as a merchant vessel was subject to arrest in rem as any other merchant vessel would be. Congress responded by enacting the SAA to provide an in personam action against the United States when a public vessel "is employed as a merchant vessel." A 1960 amendment to the SAA deleted the "employed as a merchant vessel" proviso, resulting in a statute

which on its face provided an in personam action against the United States when an in rem action could have been maintained against the vessel were it a private vessel. The Supreme Court recently held that the amendment did not expand the purview of the SAA at the expense of the restrictive provisions of the PVA. *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 178–79, 96 S.Ct. 1319, 1327–28, 47 L.Ed.2d 653 (1976). Thus, an action against a public vessel, that is one owned and operated by the United States, may be cognizable under both statutes, but the more restrictive provisions of the PVA control where the two acts are inconsistent.

700 (daily ed. Dec. 8, 1981) (comments of Senator Grassley); *id.* at S14700 (letter to Senator Dole from David Stockman, Director of OMB). Nevertheless, we conclude that § 1961, as amended, was not intended to apply to actions against the United States under the Public Vessels Act.

First, though the general provision of the statute refers to "any civil case," more specific provisions make clear that the reference was not intended to be an absolute one. Subsection (b), for example, provides for compounding interest but excludes Federal Tort Claims Act cases. Subsection (c)(2) specifically provides that interest on actions brought in the U.S. Claims Court would not be allowed until final judgment in the newly created United States Court of Appeals for the Federal Circuit. Interestingly, both the U.S. Claims Court, superseding the Court of Claims, and the Federal Circuit were created by the Federal Courts Improvement Act, Pub.L. 97–164, 96 Stat. 25 (1982), which contained the amendment to § 1961.

Blevins argues that the specific exemption for internal revenue cases and the FTCA indicates Congressional intent to include all other cases within the provisions of § 1961. To the contrary, we believe that the general language of subsection (a) read in conjunction with specific references to the United States as a litigant in subsections (b) and (c) indicate that Congress' primary concern was to eradicate the confusion of state-law interest rates in cases between private parties in the federal courts by creating a uniform federal rate which would also apply to the United States in cases arising in the Claims Court.

To hold otherwise would be to find in § 1961 a congressional intent to provide for an across the board allowance of judgment interest against the United States. Section 1961 has never been considered a general waiver of sovereign immunity from interest on judgments against the United States. *See Arvin v. United States,* 742 F.2d 1301, 1302 (11th Cir.1984), *citing Holly v. Chasen,* 639 F.2d 795, 796 (D.C.Cir. 1981). A waiver of sovereign immunity by

implication is not favored; "it must be express, and it must be strictly construed." *Id.* at 797.

Furthermore, to accept Blevins' argument that waiver of sovereign immunity is sufficiently found in the general allowance of interest in the SAA, 46 U.S.C. § 743, and that § 1961 merely controls the incidental matter of rate on an across the board basis, requires finding in § 1961 a repeal by implication of the specific rate set in § 743. "Normally there is a strong presumption against one statute repealing or amending another by implication." *Ely v. Velde,* 451 F.2d 1130, 1134 (4th Cir.1971). Furthermore, "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974). Nothing in the amendment to § 1961 or in its legislative history gives a clear indication that the § 1961 rate applicable to civil cases generally was intended to supersede all specific interest rates on judgments against the United States provided by other statutes. Indeed, the legislative history suggests that only the interest provisions contained in Title 28 were intended to be affected by the Federal Courts Improvement Act. *See* S.Rep. No. 97–275, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 22. If the interest provision of the SAA, 46 U.S.C. § 743 is to be amended to conform with the rate provided by § 1961, that is for Congress, not the courts to do.

Finally, this court has recently held that § 1961 does not control the rate of interest on a judgment for reclamation fees under the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.* (the Act). In *United States v. S.S. (Joe) Burford, Inc.,* 761 F.2d 173 (4th Cir.1985), we reversed the district court's ruling that "statutory interest" under 30 U.S.C. § 1232(e) meant interest provided by 28 U.S.C. § 1961; instead statutory interest was to be awarded under a regulation promulgated pursuant to the Act. "The regulation in

question, 30 C.F.R. § 870.15(d), was duly promulgated and has the force of law. It has not been contested. We think it was error not to enforce its provisions." *Id.* at 175. Consistent with *Burford*, we believe that it was error for the district court to ignore the express provision of the PVA, incorporating the SAA interest rate.

Accordingly, we vacate that portion of the judgment awarding interest on the judgment and remand with instructions to amend the judgment to award interest at the rate provided in the SAA, 46 U.S.C. § 743, as incorporated by the PVA, 46 U.S.C. § 782. In all other respects the judgment is affirmed.

AFFIRMED IN PART; VACATED IN PART; AND REMANDED WITH IN-STRUCTIONS.