**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOY B. PATTEN, Administrator of the
Estate of Marjory L. Blaney,
deceased,
<u>Plaintiff-Appellee,</u>

v.                                                           No. 96-1846

UNITED STATES OF AMERICA,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-95-276-R)

Argued: May 8, 1997

Decided: June 26, 1997

Before HALL, WILKINS, and WILLIAMS, Circuit Judges.

_____

Affirmed by published opinion. Judge Williams wrote the majority
opinion, in which Judge Wilkins joined. Judge Hall wrote a dissenting
opinion.

_____

**COUNSEL**

**ARGUED:** Kenneth W. Rosenberg, Tax Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.
Gregory Lee Lyons, MOSS & ROCOVICH, P.C., Roanoke, Virginia,
for Appellee. **ON BRIEF:** Loretta C. Argrett, Assistant Attorney

General, Kenneth L. Greene, Robert P. Crouch, Jr., United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. E. Elizabeth Downs, MOSS & ROCOVICH, P.C., Roanoke, Virginia, for Appellee.

_____

## OPINION

WILLIAMS, Circuit Judge:

The United States (the Government) appeals from the district court's ruling in favor of Joy B. Patten, administrator of the estate of Marjory L. Blaney (Taxpayer). The district court concluded that the effective date of 26 U.S.C. § 2040(b)(2) (1994), did not expressly or impliedly repeal the effective date of 26 U.S.C.§ 2040(b)(1) (West 1994), and therefore Patten was entitled to claim a stepped-up basis in a parcel of real property (the Property) equal to 100% of the fair market value of the Property at the time that Taxpayer's husband died. Because we agree that Congress did not expressly or impliedly repeal the effective date of § 2040(b)(1), we affirm.

I.

The Government and Patten have stipulated to the relevant facts. David Blaney, Taxpayer's husband, inherited the Property in 1952. On December 24, 1955, Blaney deeded the Property to himself and Taxpayer as tenants by the entirety. Blaney died on July 26, 1989, and Taxpayer became the sole owner of the Property. When Blaney died, the fair market value of the Property was $500,000. Blaney's estate included 50% of the value of the Property on his federal estate tax return.

In 1990, Taxpayer sold the Property for $625,000. She reported a taxable gain from the sale of $199,133,[1] based on an adjusted basis of $256,982. Taxpayer died on June 16, 1993. Patten, the administra-

_____

[1] The parties do not explain the discrepancies in the numbers. Because the parties have stipulated to the facts, we assume these values to be correct.

2

tor of Taxpayer's estate, filed an amended return for 1990 and sought a refund of $127,384. Patten arrived at this figure in part by increasing Taxpayer's adjusted basis in the Property from $256,982, the amount originally claimed, to $500,000, the full fair market value of the Property at the time of Blaney's death.

On December 1, 1994, the District Director of the Internal Revenue Service (IRS) agreed to refund $95,672 of the amount sought by Patten. The IRS refused, however, to refund the final $31,712, which was the amount of the refund attributable to Patten's claimed step-up in basis in the Property. Patten sued to recover the difference.

II.

The district court granted summary judgment in favor of Patten, reasoning that Congress has not expressly or impliedly repealed the effective date of 26 U.S.C. § 2040(b)(1). We review the grant of summary judgment de novo, using the same standards as applied by the district court. See Roe v. Doe, 28 F.3d 404, 406-07 (4th Cir. 1994). Because the parties have stipulated to the facts, our review is limited to legal questions and is therefore de novo.

A brief introduction is in order. Gain from the sale of property is computed by subtracting the seller's adjusted basis from the amount realized. See 26 U.S.C. § 1001(a) (1994). Where property is acquired from a decedent, the taxpayer's adjusted basis in the property is the fair market value at the time of death. See 26 U.S.C. § 1014(a) (1994). However, property held jointly with the decedent is considered to have been acquired from the decedent only to the extent that the property was included in the decedent's gross estate. See 26 U.S.C. § 1014(b)(9) (1994). Put simply, the surviving joint tenant ordinarily gets a basis equal to that claimed on the estate tax return of the decedent.

The estate tax treatment, in turn, is governed by 26 U.S.C. § 2040 (1994). It is this section that is the heart of the controversy here. The section currently reads:

3

(a) <u>General rule</u>

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants with right of survivorship by the decedent and any other person, or as tenants by the entirety by the decedent and spouse . . . except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than adequate and full consideration in money or money's worth . . . .

(b) <u>Certain joint interests of husband and wife</u>

(1) <u>Interests of spouse excluded from gross estate</u>

Notwithstanding subsection (a), in the case of any qualified joint interest, the value included in the gross estate with respect to such interest by reason of this section is one-half of the value of such qualified joint interest.

(2) <u>Qualified joint interest defined</u>

For purposes of paragraph (1), the term "qualified joint interest" means any interest in property held by the decedent and the decedent's spouse as --

(A) tenants by the entirety, or

(B) joint tenants with right of survivorship, but only if the decedent and the spouse of the decedent are the only joint tenants.

26 U.S.C. § 2040. In other words, if the transaction here were governed by current law, Blaney should have included only one-half of the value of the parcel in his estate tax return because the Blaneys held a "qualified joint interest" within the meaning of § 2040(b)(2). Therefore, under § 1014(b)(9), Ms. Blaney could claim only one-half of the value of the parcel as her adjusted basis.

4

The difficulty arises from the history of § 2040. Under the original § 2040, the entire value of the joint interest was included in the estate of a decedent, subject to a "tracing" rule virtually identical to that in the current § 2040(a). See Gallenstein v. United States, 975 F.2d 286, 288-89 (6th Cir. 1992) (discussing the history of § 2040). Therefore, unless the surviving spouse could trace the contribution she made to acquire the property, the decedent's estate included the entire value of the jointly held property. As a result, the surviving spouse was entitled to an adjusted basis equal to the entire fair market value of the jointly held property at the time of death.

In 1976, Congress amended § 2040 by designating the existing provisions as § 2040(a) and by adding § 2040(b) ("1976 Amendment"), the precursor to the modern provisions governing qualified joint interests. As enacted in 1976, § 2040(b) read:

> (b) Certain interests of husband and wife
>
> (1) Interests of spouse excluded from gross estate
>
> Notwithstanding subsection (a), in the case of any qualified joint interest, the value included in the gross estate with respect to such interest by reason of this section is one-half of the value of such qualified joint interest.
>
> (2) Qualified joint interest defined
>
> For purposes of paragraph (1), the term "qualified joint interest" means any interest in property held by the decedent and the decedent's spouse as joint tenants or as tenants by the entirety, but only if . . . such joint interest was created by the decedent, the decedent's spouse, or both . . . .

26 U.S.C. § 2040(b) (1976) (current version at 26 U.S.C. § 2040(b) (1994)). That is, the 1976 Amendment created a special rule for qualified joint interests, requiring that only one-half of the fair market

5

value of jointly held property be included in the decedent's estate. As a necessary corollary, the surviving spouse was entitled to only one-half of the fair market value as an adjusted basis in the property. The 1976 Amendment included an effective date, stating that it "shall apply to joint interests created after December 31, 1976." In other words, joint interests created prior to December 31, 1976 remained subject to the "tracing" rule still in place in § 2040(a), while joint interests between spouses created after December 31, 1976, were subject to treatment as qualified joint interests under§ 2040(b). Section 2040 was further amended in 1978 by the addition of subsections (c), (d), and (e), which allowed an election for joint interests created prior to December 31, 1976. To make such an election, the joint tenants had to pay a gift tax for the "deemed gift" resulting from a fictitious severance and re-creation of the joint interest. The 1978 amendment is only tangentially at issue here, in that the Government argues that the subsequent elimination of the 1978 amendment supports its reading of the statute.

The final relevant amendment occurred in 1981 ("1981 Amendment"), as part of the Economic Recovery Tax Act of 1981, "the sweeping tax reform legislation abolishing estate and gift taxes between spouses." Gallenstein, 975 F.2d at 289. The 1981 Amendment modified old § 2040(b)(2) to read:

> (2) Qualified joint interest defined
>
> For purposes of paragraph (1), the term "qualified joint interest" means any interest in property held by the decedent and the decedent's spouse as
>
> (A) tenants by the entirety, or
>
> (B) joint tenants with right of survivorship, but only if the decedent and the spouse of the decedent are the only joint tenants.

26 U.S.C. § 2040(b)(2) (1976 & Supp. V 1981) (current version at 26 U.S.C. § 2040(b)(2) (1994)). This is the current language of the statute. The 1981 Amendment did not change § 2040(b)(1), the operative

6

section, but it did eliminate subsections (c), (d), and (e). The effective date of the 1981 Amendment stated that it was "applicable to estates of decedents dying after December 31, 1981."

Thus the problem: The Blaneys' estate was created prior to December 31, 1976, but Mr. Blaney died after December 31, 1981. By its terms, therefore, § 2040(b)(1) (the operative provision) does not apply, whereas by its terms § 2040(b)(2) (the definitional provision) does. The question, then, is whether the 1981 Amendment repealed, either expressly or by implication, the effective date of the 1976 Amendment.**2** The only other circuit to consider the issue ruled that it did not, and refused to apply § 2040(b)(1) to an estate created prior to December 31, 1976. See Gallenstein, 975 F.2d at 292. Here, the district court agreed with the result in Gallenstein and ruled that § 2040(b)(1) did not apply.

Again, the question is whether the effective date of the 1981 Amendment expressly or impliedly repealed the 1976 Amendment effective date.**3** Although the Fourth Circuit has yet to consider § 2040, "[a]n express repeal requires that Congress overtly state with specificity that the subsequent statute repeals a portion of the earlier statute." Gallenstein, 975 F.2d at 290 (citing In re Buren, 725 F.2d 1080 (6th Cir. 1984)). Because the text of the 1981 Amendment does

---

**2** Contrary to our dissenting colleague's claim, Patten's argument does not rest on any "conceptual portion" of the 1976 Amendment. Dissenting Op. at 18. Rather, Patten's argument rests on the text of § 2040(b)(1), the operative provision of the statute, which was enacted in 1976 and has not been amended, altered, or modified since that time. Even if Congress was "clumsy," and even if Congress "fouled it up," we are not free to dismiss the text of an enacted law as a mere "concept."

**3** The Government argues that repeal is not the "proper" question. Among the reasons offered to support this view is the argument that the effective date of the 1976 Amendment was not codified. It is true that the effective date does not appear in the United States Code. But it is also true that the effective date was enacted as a section of the public law that was later codified at § 2040. As noted by Patten, a piece of legislation becomes law when it is passed by Congress and signed by the President. Therefore, even though the effective date was not codified, it was enacted, and it has the force of law. Accordingly, the effective date of the 1976 Amendment controls unless it was repealed.

not mention the effective date of the 1976 Amendment, there has been no express repeal.**4**

Similarly, the circumstances under which implied repeal will be found are limited:

> (1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) [i]f the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the Legislature to repeal must be clear and manifest.

Radzanower v. Touche Ross & Co., 426 U.S. 148, 154 (1976). We have recently revisited the circumstances under which an implied repeal will be found:

> [A] repeal by implication will only be found when there is clear legislative intent to support it. Or, stated differently, a later act will not repeal an earlier one in the absence of a clear and manifest intention of Congress. A court may find the requisite degree of intent when (1) "the two acts are in irreconcilable conflict," or (2) "the later act covers the whole subject of the earlier one and is clearly intended as a substitute."

United States v. Mitchell, 39 F.3d 465, 472 (4th Cir. 1994) (citations omitted) (quoting Radzanower, 426 U.S. at 154 (internal quotation marks omitted)), cert. denied, 115 S. Ct. 2578 (1995). Moreover, because an implied repeal is disfavored, there is a"strong presumption" against finding such a repeal. See Blevins v. United States, 769 F.2d 175, 181 (4th Cir. 1985); see also Farmer v. Employment Sec. Comm'n, 4 F.3d 1274, 1283 (4th Cir. 1993) (explaining that "[i]t is settled law that repeal of a statute by implication is not favored").

_____

**4** As explained by Patten, "If an express repeal must be inferred, the `repeal' is not express. A repeal that must be inferred is, by definition, an implied repeal." (Appellee's Br. at 13.)

8

Nevertheless, the Government fashions several arguments supporting its view that § 2040(b)(1) applies.

A. The "History" of § 2040

The Government first argues that the history of § 2040 makes clear that Congress "decided to jettison the overly complex spousal joint interest rules and replace them with an easily applied rule." (Appellant's Br. at 19.) The theory is that because Congress "clearly" meant to do away with the "extremely complex statutory scheme," (Appellant's Br. at 18), it follows that Congress meant to fashion a rule of uniform applicability, that is, a rule that applied to all decedents dying after December 31, 1981. To support this theory, the Government cites the legislative history of the 1981 Amendment:

> The committee believes that present rules governing the taxation of jointly held property are unnecessarily complex. In particular, the tracing requirements are burdensome to estates and survivors because jointly held assets are frequently purchased with joint funds. Further, because few taxpayers understand the gift tax consequences of joint ownership, there is widespread noncompliance.

H.R. Rep. No. 97-201, at 160 (1981). In other words, the Government argues that Congress wanted to make the estate tax treatment of jointly held property simple; because it is simple to apply § 2040(b)(1) to estates created before December 31, 1976, that is what Congress meant to do. Therefore, runs the argument, § 2040(b)(1) applies to estates created before December 31, 1976, even though it does not say that it does.

This argument is in effect an implied repeal argument, resting on the theory that the history of § 2040 evidences congressional intent to repeal the effective date of § 2040(b)(1). But the Government has not demonstrated that § 2040(b)(1) is in "irreconcilable conflict" with § 2040(b)(2), or that § 2040(b)(2) "covers the whole subject" of § 2040(b)(1). Because of the strong presumption against implied repeal, we will not find an implied repeal unless one of these conditions is satisfied. Here, the Government makes only a slim showing of congressional "intent" -- not rooted in statutory text or even legis-

9

lative history -- to support its argument for implied repeal. Accordingly, we reject the Government's argument that the history of the statute supports a finding of implied repeal.

B. Deletion of the "Created" Requirement

The Government next argues that because the 1981 Amendment eliminated the requirement that the joint interest be "created by the decedent, the decedent's spouse, or both," the requirements of § 2040(b)(1) have been substantively changed. That is, because the 1981 Amendment removed the requirement that the joint interest be "created" by the decedent, it makes no sense to require that the joint interest be created after December 31, 1976. The Government is therefore again arguing for an implied repeal, attempting to demonstrate that one action taken by Congress requires that we find Congress meant to take another.

Again, the Government's argument proves neither an"irreconcilable conflict" between § 2040(b)(1) and§ 2040(b)(2) nor that § 2040(b)(2) "covers the whole subject matter" of § 2040(b)(1). Instead, the Government makes only another general argument concerning congressional intent, which is insufficient unless one of the two conditions for implied repeal is satisfied. More fundamentally, the Government does not prove a necessary connection between removing the requirement that the joint interest be"created by the decedent, the decedent's spouse, or both" and repealing the effective date of the 1976 Amendment. As explained by Patten,"what became irrelevant after the 1981 amendment was how the spousal joint interest was created, not when it was created." (Appellee's Br. at 23.) We agree. The 1981 Amendment can be squared with the effective date of the 1976 Amendment simply by reading § 2040(b)(1) to apply only to interests created by anyone -- not just the decedent, the decedent's spouse, or both -- after December 31, 1976. We therefore reject the Government's argument here as well.

C. Reliance on a "Functional" Analysis

The Government next argues that because § 2040(b)(1) is the operational paragraph and § 2040(b)(2) is the definitional paragraph, a change in the effective date of § 2040(b)(2) necessarily changed the

10

effective date of § 2040(b)(1). That is, "[w]hen Congress amended paragraph (b)(2) in 1981 to change the definition of a `qualified joint interest,' it directly changed the application of paragraph (b)(1)." (Appellant's Br. at 23.) Because of this direct change in the application of § 2040(b)(1), argues the Government, it was unnecessary to also change the effective date.

Putting aside the fact that the Government has yet to address the predicate conditions -- either an irreconcilable conflict or that § 2040(b)(2) covers the whole subject -- this argument is logically flawed. Changing the effective date of a definitional paragraph has no direct effect on the operational paragraph. Instead, the operational paragraph could easily be read to apply to a qualified joint interest created after December 31, 1976. For decedents dying before January 1, 1982, the old definition of qualified joint interest applies, while for decedents dying after December 31, 1981, the current definition applies. Although the converse is perhaps true -- changing the effective date of an operational paragraph would arguably affect the effective date of the definitional paragraph -- the situation here is reversed, and the Government has failed to prove its theory.

D. Reliance on Legislative History

The Government next argues that the legislative history of the 1981 Amendment demonstrates that Congress meant to repeal the effective date of the 1976 Amendment. The Government does not explain why we should resort to the legislative history, considering our view that "if the statutory language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and . . . the sole function of the courts is to enforce [the statute] according to its terms." United States v. Murphy, 35 F.3d 143, 145 (4th Cir. 1994) (quotations omitted). We do not even look at legislative history unless there is an ambiguity on the face of the statute. Moreover, because implied repeal is at issue, the requisite ambiguity does not arise unless the provisions are in irreconcilable conflict or one provision "covers the whole subject matter" of the other. Accordingly, even if the legislative history supported the Government's argument, we would decline the Government's invitation to rely on the legislative history.**5**

_____

**5** In any event, the legislative history provides little guidance. The Government points only to general statements that Congress's intent was "to

11

E. "Elimination" of the Original Effective Date

The Government next argues that the 1981 Amendment "merely completed the elimination of the 1976 effective date" that Congress began with the 1978 amendment to § 2040. (Appellant's Br. at 26-27.) In 1978, Congress amended § 2040 to allow spouses with joint interests created prior to December 31, 1976, to elect to come within § 2040(b). The 1978 amendment, according to the Government, represents an "erosion" of the original effective date of the 1976 Amendment. When Congress amended § 2040(b)(2) in 1981, it also eliminated the election provided for in the 1978 amendment. The Government points to the elimination of the election provision as evidence that Congress meant to eliminate the effective date of the 1976 Amendment, thereby obviating the need for such elections.

The Government's reliance on the 1978 and 1981 amendments is a reincarnation of the "history" argument raised above, and suffers the same defects. To reiterate, evidence of congressional intent is relevant only if the sections are in irreconcilable conflict or if § 2040(b)(2) covers the whole subject matter of § 2040(b)(1). The Government has yet to prove that either condition is satisfied, and therefore evidence of Congressional intent is irrelevant. Congress may have "meant" to eliminate the effective date of the 1976 Amendment. The question here, however, is what Congress did -- not what it meant to do. Accordingly, we reject the Government's argument that the effective date of the 1976 Amendment has "eroded."

F. Avoidance of a "Windfall" to the Taxpayer

The Government next argues that leaving the effective date of the 1976 Amendment intact will result in an unintended "windfall" to the

_____

simplify the statutory scheme by eliminating tracing for all qualified joint interests, not simply those created after 1976." (Appellant's Br. at 24.) This reincarnation of the Government's first argument fares no better here. For example, the Government claims that the committee reports demonstrate Congress's belief that it was "appropriate to adopt an easily administered rule under which each spouse would be considered to own one-half of jointly held property regardless of which spouse furnished the consideration for the property." (Appellant's Br. at 24.) In no way does the quoted language establish that Congress meant to eliminate the effective date of the 1976 Amendment.

12

taxpayer. Because of the elimination in 1981 of estate and gift taxation between spouses, argues the Government, the surviving spouse will always want to include the full value of the property in the decedent's estate tax return, thereby obtaining a full stepped-up basis. In other words, "[n]ot only does the surviving spouse receive a full step-up in basis, but there is no corresponding cost by way of an increase in estate tax." (Appellant's Br. at 28.) According to the Government, such a windfall "clearly was not intended by Congress." (Appellant's Br. at 27.)

Even if the Government's premise is correct -- that leaving intact the effective date of the 1976 Amendment gives the taxpayer a "windfall" -- the conclusion surely does not follow. The Government is apparently advocating a rule of construction that if something is good for the taxpayer, it cannot be what Congress intended. While this proposition may accurately describe IRS policy, no court should use it as a legal rule. As explained by the Supreme Court, "where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall." Lewyt Corp. v. Commissioner, 349 U.S. 237, 240 (1955).

In any event, even if we were to adopt a rule of construction disfavoring windfalls, which we have not, the fact remains that the Government has not proven an irreconcilable conflict or that § 2040(b)(2) controls the whole subject matter of § 2040(b)(1). Because the conditions for an implied repeal have not been satisfied, there is no need to determine Congress's "intent," least of all by such an indeterminate rule of construction.

G. Implied Repeal of the Old Effective Date

In its final argument, the Government turns to a direct consideration of implied repeal. According to the Government, each of the previous six arguments was in fact an argument for express repeal, while this final argument is an argument for implied repeal. In none of the previous six arguments, however, did the Government point to any language in the 1981 Amendment by which Congress repealed the effective date of the 1976 Amendment. Thus, there is no express

13

repeal, and the arguments regarding Congress's intentions are best read as arguments for implied repeal. In any event, in this final argument, the Government couches its argument in terms of the test outlined above for implied repeal.

Because the district court relied heavily on Gallenstein v. United States, 975 F.2d 286 (6th Cir. 1992), the Government argues primarily against the reasoning in Gallenstein. First, the Government argues that there is an irreconcilable conflict between the two effective dates because "[l]imiting the application of the 1981 definition of `qualified joint interests' to spousal joint interests created after 1976 completely frustrates Congress' clear intent to replace the patchwork statutory scheme with a bright-line test for inclusion in the deceased spouse's gross estate." (Appellant's Br. at 33.) This argument is simply another appeal to inferential congressional intent, and it does not show an irreconcilable conflict between the operation of the two sections. "Statutory provisions will not be considered to be in irreconcilable conflict unless there is a `positive repugnancy' between them such that they `cannot mutually coexist.'" Mitchell, 39 F.3d at 472 (quoting Radzanower, 426 U.S. at 155). Here, the sections are not so irreconcilable:

> The statutory provisions at issue here cannot be characterized as being irreconcilably in conflict in the sense that there is a positive repugnancy between them or that they cannot mutually coexist. It is not enough to show that the two statutes produce different results when applied to the same factual situation, for that no more than states the problem. [Section] 2040(b)(1) applies to a qualified joint interest created after 1976, and . . . § 2040(b)(2) redefines a qualified joint interest for estates of decedents dying after 1981.

Gallenstein, 975 F.2d at 291 (citations omitted). We agree with this reasoning. There is no inherent tension between the operation of the two provisions.

Second, the Government tries to prove that § 2040(b)(2) covers the whole subject matter of § 2040(b)(1), primarily by referring to the history of the section as described above. Again, evidence of Congress's intent is relevant only if § 2040(b)(2) covers the whole subject

14

matter of § 2040(b)(1), and the Government is not permitted to bootstrap its way out of the requirement that the subsequent enactment cover the entire subject matter of the first. As described in Gallenstein:

> The statutes at issue here are far from mutually exclusive in the manner necessary for such an assumption. Congress expressly made one subsection applicable to all decedents dying after 1981. Another subsection, applicable to interests created before 1977, allowed a different computation for purposes of calculating the estate's taxable income.. . . Despite the government's extensive discussion of legislative history, we find the fact that Congress chose not to change § 2040(b)(1)'s operative effective date dispositive of this case.

975 F.2d at 292. Again, we are persuaded by this reasoning. The Government simply has not proven that § 2040(b)(2) covers the whole subject matter of § 2040(b)(1). Therefore, evidence of congressional intent should be ignored.

III.

We agree with our dissenting colleague that "[t]his case does not involve difficult questions of express or implied repeal." Dissenting Op. at 16. On the contrary, this case involves easy questions of express or implied repeal -- there has been neither, and § 2040(b)(1) continues to apply only to estates created after December 31, 1976. Congress may have intended to repeal the effective date of the 1976 Amendment, and a single effective date might be simpler and easier to administer. Nevertheless, "even the will of the majority [of Congress] does not become law unless it follows the path charted in Article I, § 7, cl. 2 of the Constitution." Landgraf v. USI Film Prods., 511 U.S. 244, 263 (1994) (citing INS v. Chadha, 462 U.S. 919, 946-51 (1983)). The question is what Congress did, not what it meant to do, and we find no evidence that Congress eliminated the effective date of the 1976 Amendment. We therefore affirm the decision of the district court.

AFFIRMED

15

HALL, Circuit Judge, dissenting:

In my view, the majority opinion is not so much wrong as it is beside the point. This case does not involve difficult questions of express or implied repeal. On the contrary, we are asked simply whether an act of Congress applicable to the estates of decedents dying after December 31, 1981, applies to the estate of a decedent dying after December 31, 1981. The answer is manifest, so I am constrained to dissent.

I.

As the majority notes, before 1976, all joint interests in property were treated the same for estate tax purposes. The decedent's estate included the full market value of the property, except to the extent that the survivor could show that he or she contributed money toward the property's purchase or improvement. The survivor's basis in the property was -- and still is -- the amount included in the decedent's estate.

The pre-1976 rule was a great injustice to housewives. Their husbands generally had been the bread (and thus the property) winners. If the husband died first, the wife was stuck with an estate tax bill (at the time, the marital deduction was only 50% of the estate passing to the survivor). On the other hand, if the wife died first, the husband could take the property free of charge.

Congress began a series of clumsy reforms in 1976. It added 20 U.S.C. § 2040(b),[1] which provided that, for a "qualified joint interest" of a husband and wife, the decedent's gross estate included only one-half of the value of the property, notwithstanding which spouse contributed the funds for its purchase. This was a great idea, except that Congress fouled it up right away by defining "qualified joint interests" as those (i) created by the decedent, the survivor, or both (ii) after December 31, 1976. Thus, the reform applied to nothing when enacted, and preexisting joint interests could be made "qualified joint interests" only if the couple took formal steps to record a new deed,

_____

[1] The old rule survives for non-spousal joint interests and is codified at 20 U.S.C. § 2040(a).

16

etc. Naturally, many of the persons the new statute was designed to benefit failed to take those steps.

Congress tried to fix § 2040 in 1978, but succeeded only in making things worse. Section 2040c was added to permit a reduction in the decedent's gross estate where the survivor, though not contributing capital, had participated in a farm or business. Section 2040(d) took the logical step of eliminating the need for a re-creation of the pre-1976 joint interest, but <u>only if</u> the couple filed a gift tax return -- and paid any applicable tax -- reporting the parties' contributions to the property's purchase and appreciation. Naturally, couples were just as unlikely to pay taxes on their own initiative as to draw up a new deed. Finally, new § 2040(e) delivered the regime of complexity's coup de grace: even if a couple re-created their pre-1976 joint interest by deed, there would be no "qualified joint interest" unless they <u>also</u> filed the gift tax return under § 2040(d).

II.

In 1981, Congress undertook a grand revision of the tax code. It finally did the right thing with § 2040:

> (i) the 1978 amendments (subsections (c), (d), and (e)) were repealed, and

> (ii) subsection (b) was revised to make any property held by the decedent as a spousal joint tenant a "qualified joint interest,"

> (iii) with the new (b) "<u>applicable to estates of decedents dying after December 31, 1981.</u>"

Simultaneously with this amendment, the marital deduction for the surviving spouse was increased to 100%. This change allowed the tax burden of spousal joint property to be deferred until either both died or the survivor sold the property and realized a gain.

III.

When David Blaney died, the 1981 amendment was, by its own terms, applicable to his estate, so only half of the value of the prop-

17

erty was included. When Marjory Blaney sold the property the next year, she used as her basis the amount included in her husband's estate, which was also in compliance with clear law. See 26 U.S.C. § 1014(b)(9). Her administratrix has now convinced the majority that this adherence to the letter of the law was wrong.

The administratrix's argument is that Congress created the concept of "qualified joint interest" in 1976 and made it effective only prospectively. The 1981 amendment did not "repeal" this conceptual portion of the 1976 law, and, therefore, § 2040(b) really applies only to "estates of decedents dying after December 31, 1981" where any pre-1976 joint interest would have been a "qualified joint interest" under prior law.

Of course, the statute says no such thing, and, inasmuch as the statute is clear on its face, we have no license to construe it to include this far-reaching proviso. It just does not matter what sort of concept Congress created in 1976, because, in 1981, it created an entirely different one. Since December 31, 1981, "qualified joint interest" has been defined solely by the date of the first spouse's death. There was no reason or need for Congress to repeal the effective date of a repealed definition. Everyone who died on or before December 31, 1981, has died; all who were destined to survive survived. It takes no act of Congress to ratify the effect of the sands of time.

In sum, "qualified joint interest" was once defined by the time and manner of the creation of the interest; now it is defined by the date of death. David Blaney's death fit the definition. **2**

I would reverse.

_____

**2** It bears noting that the administratrix's argument provides for a windfall that Congress surely did not intend. The 100% marital deduction was enacted simultaneously with the new § 2040(b). By providing that the survivor's basis was only half of the property's value, Congress ensured that the survivor or her estate would ultimately pay some tax. To include 100% of the value in the decedent's estate (under the old rules) and permit the survivor a 100% deduction (under the new rules) is illogical and supports my view that the statute was intended to mean what it clearly says -- it applies to estates of decedents dying after December 31, 1981. It applies here.

18