**Rafael MEDINA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. A. 99–1498–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 25, 2000.

Edward S. Rosenthal, Alexandria, VA, for Plaintiff.

Jeri Kaylene Somers, United States Attorney's Office, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

THIS matter is before the Court on Defendant United States of America's Motion to Dismiss. Plaintiff Rafael Medina filed suit against the United States for intentional torts and violation of his Fourth Amendment rights pursuant to the Federal Tort Claims Act, stemming from his arrest and detention by Immigration and Naturalization Service agents. The United States moved to dismiss Plaintiff's claim for lack of subject matter jurisdiction. The issue presented is whether Section 242(g) of the Immigration and Naturalization Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 (codified as 8 U.S.C. § 1252(g)) deprives the Court of jurisdic-

tion over Plaintiff Medina's action against the Immigration and Naturalization Service under the Federal Tort Claims Act. For the reasons stated below, the Court holds that Section 1252(g) does not divest the Court of jurisdiction over Plaintiff's claims. Thus, Defendant's Motion to Dismiss is denied.

## I. Background

Plaintiff Rafael Medina is a citizen of the Republic of Venezuela. On April 3, 1996, he entered the United States at Miami, Florida on an A2 visa, as an accredited foreign government official with the Embassy of the Republic of Venezuela. He resided in Arlington County, Virginia. In September 1996, Plaintiff's fiancee contacted the police and accused Plaintiff of forcing himself into her apartment, throwing her against the wall, and attempting to rape her. The Circuit Court for the City of Alexandria charged Plaintiff with burglary, sexual battery, attempted rape, and assault and battery. Waiving diplomatic immunity, Plaintiff voluntarily surrendered and submitted himself to the jurisdiction of the court. He went to trial on a plea of not guilty. After a jury trial, Plaintiff was convicted of misdemeanor assault and battery, but acquitted of the remaining charges.

In June 1997, the Immigration and Naturalization Service ("INS") obtained a Notice to Appear to commence removal proceedings against Mr. Medina. On July 2, 1997, Plaintiff was seized, searched, and arrested by agents of the INS at his home. The INS's Notice to Appear alleged Mr. Medina was subject to removal under Section 237(a)(2)(A)(i) of the Immigration and Naturalization Act for being convicted of a crime involving moral turpitude. Plaintiff appealed his misdemeanor conviction to the Virginia Court of Appeals. Plaintiff filed a motion to terminate the removal proceedings before the INS on the grounds that assault and battery is a misdemeanor and is not a crime involving moral turpitude. The Government did not oppose Plaintiff's motion. On September 17, 1997, the Immigration Judge terminated the proceedings. Mr. Medina withdrew his appeal of the state court misdemeanor conviction.

Plaintiff filed an administrative claim under the Federal Tort Claims Act with the INS. After Plaintiff's administrative claim was denied, he filed the present Complaint, alleging assault and battery (Count I), false arrest (Count II), malicious prosecution (Count III), intentional or negligent infliction of emotional distress (Count IV), and unlawful search and seizure in violation of the Fourth Amendment and the law of the Commonwealth of Virginia (Count V).

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Where subject matter jurisdiction is challenged, the burden of proving such is on the plaintiff. *See Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). The court is required to accept the well-pled allegations of the complaint as true for the purposes of the motion. *See Virginia v. United States*, 926 F.Supp. 537, 540 (E.D.Va.1995). However, the court may look beyond the jurisdictional allegations of the complaint and consider whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999).

## III. The Federal Tort Claims Act and Subject Matter Jurisdiction

██ Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. *See FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). In 1946, Congress passed the Federal Tort Claims Act ("FTCA"), which waived the sovereign immunity of the United States for certain torts committed by federal employees. *See* 28 U.S.C.A. §§ 1346(b) (West Supp. 1999); *id.* §§ 2671–2680 (West 1994). Specifically, Section 1346(b) provides that

the United States government can be sued for

> the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Congress excepted from the waiver of sovereign immunity any claims arising out of an intentional tort, including assault, battery, false imprisonment, and false arrest. *See* 28 U.S.C.A. § 2680(h); *see also Thigpen v. United States,* 800 F.2d 393, 394 (4th Cir.1986). The FTCA also bars claims which depend on the assault and battery by a government employee. *See Thigpen,* 800 F.2d at 395. However, Congress also limited this exception by exempting investigative and law enforcement officials who commit an intentional tort. *See* 28 U.S.C.A. § 2680(h). Thus, this section of the FTCA serves as an exception to the exception. The federal government waives sovereign immunity for the acts of investigative and law enforcement officials who commit an intentional tort against an individual.[1]

█ INS agents constitute investigative and law enforcement officers for purposes of the FTCA. *See Caban v. United States,* 671 F.2d 1230, 1234 n. 4 (2d Cir.1982)(holding that the alleged actions of the INS in detaining the plaintiff were not protected by the discretionary function exception of the FTCA); *Ramirez v. United States,* 998 F.Supp. 425, 433 (D.N.J.1998)(holding that the United States was not immune from an FTCA claim which alleged wrongful con-

duct by INS agents who were law enforcement officers). Pursuant to 8 U.S.C. §§ 1225(a) and 1357, INS agents are federal officers who have the power to search, seize, and arrest. *See* 8 U.S.C.A. §§ 1225(a), 1357 (West 1999). The FTCA waives sovereign immunity for liability of certain intentional torts committed by INS agents. In this case, the INS agents seized and arrested Mr. Medina pursuant to a Notice to Appear and are alleged to have committed intentional torts against him. Thus, the FTCA waives the government's sovereign immunity as it relates to the agents' seizure and arrest of Mr. Medina.

In its motion to dismiss, the United States contends that the 1996 amendment to the Immigration and Naturalization Act repealed an individual's right to bring a civil action for intentional torts under the FTCA against INS agents. Therefore, the issue before the Court is whether its jurisdiction to hear Mr. Medina's claims was subsequently repealed by the Immigration and Naturalization Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.

### IV. Jurisdictional Limitations and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

Judicial review of immigration decisions to admit or exclude aliens is generally governed by the Immigration and Naturalization Act ("INA"). In 1996, the INA was amended by two statutes: the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (April 24, 1996), and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208,

---

1. While the FTCA waives the government's sovereign immunity for intentional torts committed by federal employees, it does not waive sovereign immunity for constitutional torts that may be committed. *See* 28 U.S.C.A. § 2679(b)(1)-(2). In that case, an action would lie directly against the federal employee. *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 395–97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In Count V of his Complaint, Mr. Medina

alleges an unlawful search and seizure in violation of the Fourth Amendment and the law of the Commonwealth of Virginia. The Court recognizes that the FTCA has not waived sovereign immunity as far as the alleged constitutional violation. However, that issue is not presently before the Court. Furthermore, the Court will address the constitutional issue in that it recognizes that Mr. Medina could have a claim against the individual INS agents.

110 Stat. 3009 (September 30, 1996). Both of these statutes significantly restricted the availability of judicial review of immigration decisions to admit or exclude aliens under the INA.[2] However, the IIRIRA went further than the AEDPA and restructured the scope of judicial review of immigration decisions.[3] As related to this motion, Section 242(g) of the INA, as amended under the IIRIRA, and codified as 8 U.S.C. § 1252(g)(hereinafter " § 1252(g)"), is entitled "Exclusive Jurisdiction" and provides

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C.A. § 1252(g) (West 1999). The parties dispute whether § 1252(g) divests the Court of subject matter jurisdiction to hear Plaintiff's FTCA claims against INS.

Relying on segments of the statute, the United States contends that this action is barred by § 1252(g) of the IIRIRA. Defendant specifically relies on the portion which states "notwithstanding any other provision of law" no court shall have jurisdiction to hear any claim arising out of the decision of the Attorney General to "commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." *Id.* § 1252(g). Defendant submits that this section grants the INS exclusive jurisdiction over certain removal actions taken by the Attorney General. *See* 8 U.S.C.A. § 1252(g); *see also Reno v.*

*American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)[hereinafter "*AADC*"]; *Stewart v. USINS,* 181 F.3d 587 (4th Cir.1999); *Humphries v. Various Federal USINS Employees,* 164 F.3d 936 (5th Cir.1999). Defendant contends that Congress explicitly withdrew any basis for jurisdiction, under the FTCA or any other provision of law, for a court to evaluate Plaintiff's specified claims.

The United States submits that Plaintiff's Complaint is premised upon his claim that INS wrongfully initiated removal proceedings against him. Following Defendant's argument, if Plaintiff was assaulted by INS agents executing an INS warrant, then he has no right to access to the courts under the FTCA because there is a clear causal link between the Attorney General's decision and the INS's actions in taking Plaintiff into custody. *See Humphries,* 164 F.3d at 943 (dismissing an alien's claim that he was excluded in retaliation for exercise of his First Amendment rights because the Attorney General's decision to place the plaintiff in exclusion fell under § 1252(g)). In essence, the United States alleges that Congress silently repealed the FTCA for intentional tort claims against the government for acts of INS agents.

In opposition, Plaintiff Medina argues that Congress did not intend to affect or revoke that jurisdiction of the federal courts to adjudicate FTCA actions in the aforementioned statutory amendment, but only to restructure the scope of judicial review of immigration decisions and to streamline the judicial process in removal decisions. Despite the United States' reli-

---

**2.** The AEDPA began the process of streamlining the procedures to expedite judicial review of immigration decisions. It eliminated the judicial review process of deportation and exclusion orders for noncitizens convicted of "aggravated felonies" and eliminated the INA's statutory basis for habeas corpus relief. INA § 106(a)(10)(amending 8 U.S.C. § 1105a(a)(10)(1970)). Prior to the amendment, Section 1105a(a)(10) provided that "[A]ny alien held in custody pursuant to an order of deportation may obtain judicial re-

view thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(10)(repealed 1996).

**3.** The IIRIRA largely eliminated the distinction between exclusion and deportation proceedings from the past, replacing it with a single removal proceeding. It continued the distinction for the "criminal aliens." However, the IIRIRA § 306 repealed INA § 106 in its entirety and replaced it with revised INA § 242, codified at 8 U.S.C. § 1252.

ance on the *AADC* case, Plaintiff contends that *AADC's* holding is inapplicable to the present case involving an FTCA claim for money damages. Plaintiff submits that in *AADC* the justices construed § 1252(g)'s jurisdictional limitations within the limited context of avoiding the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *See* 525 U.S. at 486–87, 119 S.Ct. 936. Plaintiff argues that where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear. *See Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). Furthermore, Plaintiff submits that since there is no ongoing deportation proceeding and that Plaintiff has successfully avoided entry of a removal order, the FTCA is Plaintiff's only avenue to vindicate his rights. Plaintiff does not seek to review or modify the INS decision in his immigration matter, rather Plaintiff seeks monetary damages for alleged violation of his constitutional rights and for civil wrongs.

The United States Supreme Court has held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988)(citing *Johnson v. Robison,* 415 U.S. 361, 373–74, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)). In *Johnson,* the Court stated that it required " 'clear and convincing' evidence of congressional intent ... before a statute will be construed to restrict access to judicial review." 415 U.S. at 373–74, 94 S.Ct. 1160. The Court noted that it requires this "heightened showing in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *See Webster,* 486 U.S. at 603, 108 S.Ct. 2047 (citing *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986)).

■ In general, repeals of statutes by implication are particularly disfavored.

*See Traynor v. Turnage,* 485 U.S. 535, 548, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); *Bowrin v. USINS,* 194 F.3d 483, 489 (4th Cir.1999). In fact, under principles of statutory construction, the courts must apply a presumption against the implied repeal of prior law.[4] *See Patten v. United States,* 116 F.3d 1029, 1034 (4th Cir.1997); *Ely v. Velde,* 451 F.2d 1130, 1134 (4th Cir.1971). However, the presumption against repeal by implication can be overcome by showing that there was clear legislative intent. *See Patten,* 116 F.3d at 1034. Congressional intent can be shown when: 1) the two acts are in irreconcilable conflict, or 2) the later act covers the whole subject of the earlier one and is clearly intended as a substitute. *See id.* (citing *United States v. Mitchell,* 39 F.3d 465, 472 (4th Cir.1994)).

■ In this case, the IIRIRA does not explicitly divest the district court of jurisdiction to hear Mr. Medina's FTCA claims. Furthermore, the United States fails to overcome the presumption against implied repeal. The United States submits that "notwithstanding any other provision of law" serves as a clear mandate from Congress and adopting Mr. Medina's reading of the statute undermines Congress' intent and the orderly course of removal actions. However, this Court disagrees. In order to effect a repeal, Congress should have stated that it intended to repeal the FTCA as it related to aliens. As it stands, the statute as well as the legislative history is devoid of such a statement that repeals subject matter jurisdiction for FTCA claims. *See* Report of the Committee on the Judiciary, House of Representatives on H.R. 2202, Rept. 104–469 (1996). Furthermore, the IIRIRA and the FTCA are not in conflict. Mr. Medina's claims do not serve to challenge his rémoval, but serve to assert his rights for civil torts and to compensate him for alleged violation of his liberty and constitutional rights.

This is not the first time that the United States has advanced an expansive view of

---

4. *See also* NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 23.10 (5th ed.)

the effect of the AEDPA and the IIRIRA in a matter touching upon the right of aliens' access to our courts. In an analogous context, the district court's exercise of habeas corpus jurisdiction has been challenged under the INA, as amended by the AEDPA and IIRIRA. Section 2241 of Title 28 of the United States Code provides the statutory authority for the writ of habeas corpus. Specifically, the statute authorizes the court to grant writs of habeas corpus for persons "in custody under or by color of the authority of the United States." 28 U.S.C.A. § 2241(c)(1), (3) (West 1994). Neither the IIRIRA nor the AEDPA expressly amended § 2241. Yet, at times, the United States has asserted that the great writ of habeas corpus was repealed by these amendments.

The Supreme Court has held that habeas corpus jurisdiction cannot be amended or repealed absent express language. *See Felker v. Turpin*, 518 U.S. 651, 661, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)(holding that under the "clear statement" rule, § 2241 jurisdiction cannot be repealed by implication); *see also Bowrin*, 194 F.3d at 489 (holding that neither the language of either the AEDPA nor the IIRIRA eliminated general habeas corpus review under § 2241 where there was no specific reference to the statute). While the AEDPA eliminated the writ of habeas corpus as stated in the INA, the AEDPA did not eliminate the writ of habeas corpus pursuant to 28 U.S.C. § 2241.[5] *See Henderson v. INS*, 157 F.3d 106, 117–122 (2d Cir.1998)(holding that the federal courts have jurisdiction under § 2241 to grant writs of habeas corpus to aliens when they are in custody in violation of the Constitution or law of the United States); *Goncalves v. Reno*, 144 F.3d 110, 122 (1st Cir.1998)(stating that the court's refusal to find express repeal of § 2241 in INA § 242(g) eliminates the need to address serious and complex constitutional issues); *Salazar–Haro v. INS*, 95 F.3d 309, 311 (3rd Cir.1996)("To the extent, therefore, that constitutional rights applicable to

aliens may be at stake, judicial review may not be withdrawn by statute."); *Williams v. INS*, 114 F.3d 82, 84 (5th Cir.1997)(while acknowledging that the AEDPA precluded judicial review of a final deportation order, stating that a limited opportunity to apply for a writ of habeas corpus may remain); *Mansour v. INS*, 123 F.3d 423, 426 (6th Cir.1997)(finding that AEDPA's limits on review were constitutional because of the continued availability of habeas review). *But see Yang v. INS*, 109 F.3d 1185, 1195–96 (7th Cir.1997)(stating that IIRIRA as codified in § 1252(g) abolishes review under 28 U.S.C. § 2241).

Similarly, in this case, Mr. Medina asserts his claims pursuant to a statutory basis that is separate and distinct from the INA. Mr. Medina brings his suit for monetary damages under provisions of the FTCA, 28 U.S.C. § 2671, *et seq.*, and 28 U.S.C. § 1346(b)(1). Nothing in the INA expressly amends or repeals the FTCA. If the IIRIRA and AEDPA cannot implicitly repeal or amend the separate statutory basis for habeas relief, then the IIRIRA cannot eliminate Mr. Medina's claims under the FTCA pursuant to 28 U.S.C. § 1346(b).

Only the Fifth Circuit has addressed the application of § 1252(g) in a similar context. *See Humphries v. Various Federal USINS Employees*, 164 F.3d 936 (5th Cir. 1999). In that case, an alien brought civil rights and contract claims against various INS agents for monetary damages. The court stated the section's jurisdictional limitations may apply to certain monetary damage claims, but only with respect to such claims that clearly are connected directly and immediately with a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders. *See id.* at 943. The court reinstated the plaintiff's claims for involuntary servitude and mistreatment, holding that these claims did not arise from the decision of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders. *See*

---

**5.** *See* discussion *supra* note 2.

*id.* at 944. The court found that § 1252(g) applied to prevent the court from hearing the plaintiff's *Bivens* claims. *See id.* at 945. However, this Court disagrees with the majority's decision in *Humphries* because there is nothing in § 1252(g) which indicates that it was intended to foreclose monetary damages based on violations of federally protected rights. *See id.* at 947–951 (Dennis, J., concurring in part and dissenting in part)(stating that there was an insufficient basis for believing that Congress intended to divest the district courts of their jurisdiction under the federal question jurisdictional statute).

The United States relied heavily on *AADC*, a Supreme Court case addressing the exclusive jurisdiction clause of the IIRIRA. 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). In that case, a group of resident aliens filed suit claiming that they had been targeted for deportation because of their affiliation with a politically unpopular group in violation of their First Amendment rights. *See id.* at 472–73, 119 S.Ct. 936. The federal courts enjoined the INS from proceeding with the deportation hearings. *See id.* at 475, 119 S.Ct. 936. The Supreme Court held that the exclusive jurisdiction clause of the IIRIRA deprived the courts of jurisdiction over the action to enjoin INS decisions to exclude aliens. *See id.* at 478, 119 S.Ct. 936.

However, the Court finds that *AADC* is inapplicable to the present case as it involved a different set of facts and legal principles. In that case, the aliens were waging a collateral attack to enjoin INS action in a pending deportation proceedings against them. Thus, the Supreme Court focused primarily on the propriety of collateral claims for injunctive and declaratory relief of the INS decision to exclude them from the country. In Mr. Medina's case, he is not seeking a collateral attack of ongoing immigration proceeding. His claim is for monetary damages for alleged violations of his rights and was

brought after the Immigration Judge terminated the proceedings against him.

The distinction between prohibiting judicial intervention in a pending immigration proceeding and permitting a tort claim after the termination of a proceeding is consistent with the rationale articulated by the Supreme Court. Although the Court issued four separate opinions, each states that the purpose of § 1252 was to streamline the judicial review of deportation issues in pending proceedings.[6] Writing for the majority, Justice Scalia noted that the IIRIRA was specifically directed at protecting the Executive's discretion from the courts and "the deconstruction, fragmentation, and hence prolongation of removal proceedings." 525 U.S. at 486–87, 119 S.Ct. 936. Justice Ginsberg stated that "Congress has established an integrated scheme for deportation proceedings, channeling judicial review to the final order, and deferring issues outside of the agency's authority until that point. Given Congress' strong interest in avoiding delay of deportation proceedings ... I find the opportunity to raise a claim during the judicial review phase sufficient." *Id.* at 495, 119 S.Ct. 936 (Ginsberg, J., concurring). Justice Stevens wrote that "the meaning of 8 U.S.C. §§ 1252(b)(9) and (g)(1994 ed., Supp. III) is perfectly clear. The former postpones judicial review of removal proceedings until the entry of a final order and the latter deprives federal courts of jurisdiction over collateral challenges to ongoing administrative proceedings." *Id.* at 499, 119 S.Ct. 936 (Stevens, J., concurring)(footnotes omitted). Even in his dissent, Justice Souter explained that "The intent of this provision was presumably to preclude judicial review of nonfinal steps in the removal procedure in the interim before IIRIRA's effective date of April 1, 1997." *Id.* at 504 n. 1, 119 S.Ct. 936 (Souter, J., dissenting).

The Supreme Court's analysis is consistent with Congress' intent. The Supreme

---

**6.** The majority opinion was issued by Justice Scalia, with two concurring opinions from Justice Ginsberg, who was joined by Justice

Breyer as to Part I, and Justice Stevens. Justice Souter wrote a dissent.

Court noted that "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraint upon prosecutorial discretion." *See AADC,* 525 U.S. at 485 n. 9, 119 S.Ct. 936. The IIRIRA sought to "enable the prompt admission of those who are entitled to be admitted, the prompt exclusion or removal of those who are not so entitled, and [make] the clear distinction between these categories." Report of the Committee on the Judiciary, House of Representatives on H.R. 2202, Rept. 104–469, at 111 (1996). Limiting judicial review of pending immigration proceedings promotes the Executive's prompt decisions. Specifically, § 1252(g) furthers these goals by removing from judicial review claims arising from the Attorney General's commencement or prosecution of removal proceedings and execution of removal until the order has become final. *See Humphries,* 164 F.3d. at 950–51 (Dennis, J., dissenting).

Furthermore, this Court declines to apply an expansive reading of § 1252(g). In *AADC,* the Supreme Court interpreted § 1252(g) to mean that it does not preclude judicial review of all "decisions or actions that may be part of the deportation process." 525 U.S. at 482, 119 S.Ct. 936. The Court rejected the concept of the section applying to "the universe of deportation claims." *Id.* Instead, the Court reiterated that this provision applies to a narrow set of circumstance: three discrete actions taken by the Attorney General, commencing proceedings, adjudicating cases, or executing removal orders. *See id.* The Court went on to say that "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

This Court holds that § 1252 does not reach Plaintiff's right to bring a claim for money damages for intentional torts and violations of constitutional rights against the United States under the FTCA in this case where the immigration proceedings have terminated. The deportation proceedings were completed on September 17, 1997—long before Mr. Medina instituted the present suit. However, as there was no final order of removal, Mr. Medina has nothing to challenge on appeal. His only recourse to bring his claim for injuries resulting from intentional torts and constitutional violations of his rights is to challenge the action pursuant to the FTCA and pursue a claim for monetary relief.

If the Court were to adopt the United States' broad reading of § 1252, there would be no judicial review of a claim by an alien that stems from an arrest on an INS detention order even where there is blatantly lawless and unconstitutional conduct by the INS agents—placing their conduct beyond judicial review and creating grave constitutional issues.[7] As long as there is no removal, there is no review. Under this expansive reading, it is questionable whether the Court would be able to hear *Bivens* actions against the individual agents for constitutional violations. *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). According to the Fifth Circuit, the court could not. *See Humphries,* 164 F.3d at 945.

In *Humphries,* the Fifth Circuit held that the district court lacked jurisdiction to hear the plaintiff's *Bivens* claim for retaliatory exclusion in violation of the First Amendment. *See id.*[8] However, *Bivens*

---

7. There is no reason to conclude that acts of INS agents are entitled to this protection, which is not afforded to those of a president, congressman, or other federal officers.

8. The Fifth Circuit rationalized its decision by stating that an alien attempting to raise a *Bivens* claim may proceed through a petition for review or for habeas corpus. *See Hum-*

*phries,* 164 F.3d at 945. However, the court recognized that if these avenues of relief were unavailable, it might find itself confronted with the precise "serious constitutional question" which would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim. *See id.* at 945 n. 9 (citing *Webster,* 486 U.S. at 603, 108 S.Ct. 2047).

expressly intended to provide a cause of action against federal officers, acting under the color of federal authority, for money damages resulting from constitutional violations. 403 U.S. at 395–97, 91 S.Ct. 1999. "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Id.* at 392, 91 S.Ct. 1999 (quoting *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). Clearly, § 1252(g) does not indicate that Congress intended to divest the court of jurisdiction over *Bivens* actions arising out of the unconstitutional conduct of federal officers. The court should not have inferred Congress' intention. For this reason, this Court is not persuaded by the United States' reliance on *Humphries.*

Thus, the Court holds that it does have subject matter jurisdiction to hear the claims of Mr. Medina under the Federal Tort Claims Act.

### V. Conclusion

For the reasons stated above, the United States' Motion to Dismiss is DENIED.