Present: All the Justices

MAYNARD LAMBERT, JR.

OPINION BY
v.  Record No. 003012      JUSTICE LAWRENCE L. KOONTZ, JR.
                              November 2, 2001
DOWNTOWN GARAGE, INC., ET AL.


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William H. Ledbetter, Jr., Judge


In this appeal, we consider whether the trial court erred in granting a motion to strike the plaintiff's evidence on his claims for common law fraud and violation of the Virginia Consumer Protection Act, Code §§ 59.1-196 through -207, arising from the purchase of a used car.

BACKGROUND

On July 30, 1995, a 1988 Dodge Dynasty four-door sedan (the vehicle) belonging to Dennis Morgan, II, was damaged in a single car accident. The damage appeared to be confined to the front end of the vehicle. The vehicle was towed to Downtown Garage, Inc., in Fredericksburg. Morgan went to Downtown Garage the following day with his father and inspected the damage. Because Morgan could not afford the cost of repairing the vehicle, he agreed to "turn the [title] over to [Downtown Garage] and let them do whatever they wanted to do." At that time, Morgan's father told Morgan that the vehicle was "totaled."

Maynard Lambert, Jr., was previously employed as a painter at another location by Darrell G. Johnson, the owner of Downtown Garage. Lambert's father was employed as a mechanic by Downtown Garage at the time the vehicle was being repaired. Although Lambert's father was not assigned to perform work on the vehicle, he subsequently testified that he observed the vehicle when it was "on the lift . . . and it looked to [him] like the tailpipe was bent and [he] told the mechanic . . . that [the mechanic] should check it."

On September 17, 1995, Lambert went to Downtown Garage and spoke with Johnson about purchasing the vehicle. According to Lambert, the vehicle was "fully repaired," needing only "a trim out," that is the reinstallation of trim, bumpers, and some mechanical parts previously removed so that the vehicle could be painted. Lambert was aware that the vehicle's front end had been damaged in an accident and asked Johnson "if the vehicle had been seriously damaged or totaled." According to Lambert, Johnson replied, "No . . . don't worry about it; I bought it from a friend and it's in excellent condition." Johnson advised Lambert that the bumper, fender, and radiator had been replaced. Lambert started the engine, but did not test drive the vehicle or conduct more than a cursory visual inspection of it at that time. Lambert and his mother purchased the vehicle from

Downtown Garage on September 19, 1995 for $3,400. The vehicle was sold "as is" without any warranty.

Subsequently, Lambert experienced occasions when the vehicle's power windows and power door locks failed to operate properly. Johnson advised Lambert that the problem would be corrected, but that an appointment for that purpose could not be scheduled at that time.

On December 22, 1995, while Lambert was driving the vehicle, it caught fire. Lambert was unable to unlock the driver's side door of the vehicle and lost consciousness. He was rescued by another motorist, but was badly burned.

On May 8, 1998, Lambert filed a motion for judgment against Downtown Garage and Johnson (hereinafter collectively, "Downtown Garage") seeking damages under the theory that Downtown Garage had sold the vehicle in violation of the Consumer Protection Act. On July 31, 1998, Lambert filed a separate motion for judgment against Downtown Garage alleging that the sale of the vehicle had been accomplished by common law fraud.[1] In each instance, Lambert relied upon the statement made by Johnson on September 17, 1995, to the effect that the vehicle was in

---

[1]Lambert also asserted various other theories of liability in this second suit. The trial court sustained Downtown Garage's demurrer to all causes of action of this suit except the claim for common law fraud. Lambert does not challenge the sustaining of that demurrer in this appeal.

"excellent condition" and Johnson's failure to advise Lambert of the nature and extent of the damage to the vehicle, including the possibility of damage to the exhaust system, as supporting his allegations that Downtown Garage had made a material misrepresentation of fact with respect to the vehicle. The two suits were consolidated for trial.

In a jury trial held October 25, 2000, evidence in accord with the above recounted facts was received. In addition, Lambert called Gregory A. Harrison as an expert witness to testify about the origin and cause of the fire in the car. Harrison testified that "after reading the file materials, witness statements and looking at the car," he determined that "the fire started in the rear of the car and that the cause of the fire was heat from the exhaust system conducted to – or radiated through the passenger compartment at the rear portion." Harrison conceded that he could not specifically say whether the exhaust system had been in contact with the "underside carriage" or "floor board" of the car or otherwise damaged prior to the fire because the rubber mounting brackets for the exhaust system had been destroyed by the fire and the exhaust system had separated from the underside of the car as a result.

At the conclusion of Lambert's evidence, Downtown Garage made a motion to strike the evidence as to both theories of liability. In reviewing the evidence, the trial court stated

4

that "for the purposes of this [motion]" it would assume that

Johnson's statement that the vehicle "was not totaled or not

seriously damaged . . . and was in good or excellent condition"

constituted a misrepresentation.  The trial court found,

however, that there was insufficient evidence that this

"misrepresentation" was causally connected to the subsequent

fire and Lambert's resulting injuries so as to sustain

allegations of common law fraud or a violation of the Consumer

Protection Act.  Accordingly, the trial court granted the motion

to strike and entered final judgment in favor of Downtown

Garage.  We awarded Lambert this appeal.

DISCUSSION

Under the specific theories advanced by Lambert in the

trial court, a misrepresentation of fact is a necessary element

of proof to his claim for common law fraud, Mortarino v.

Consultant Eng. Services, 251 Va. 289, 295, 467 S.E.2d 778, 782

(1996), and the claim for a violation of the Consumer Protection

Act.[2]  Thus, the dispositive question in this appeal is whether

_____

[2]Lambert cites three subsections of Code § 59.1-200 as
supporting his contention that the jury could have found that
Downtown Garage violated the Consumer Protection Act.
Subsection 6 prohibits a supplier from "[m]isrepresenting that
goods or services are of a particular standard, quality, grade,
style, or model;" subsection 10 prohibits "[m]isrepresenting
that repairs, alterations, modifications, or services have been
performed or parts installed;" and subsection 14 prohibits
"[u]sing any other deception, fraud, false pretense, false

5

Lambert's evidence established that Downtown Garage made a fraudulent misrepresentation of fact. The applicable standard of review is clear:

> The standard under which a trial court should review the evidence adduced at trial before granting a motion to strike the case at the end of a plaintiff's evidence is well settled under prior decisions of this Court. That standard requires the trial court to accept as true all the evidence favorable to the plaintiff as well as any reasonable inference a jury might draw therefrom which would sustain the plaintiff's cause of action.

Austin v. Shoney's, Inc., 254 Va. 134, 138, 486 S.E.2d 285, 287 (1997); accord Claycomb v. Didawick, 256 Va. 332, 335, 505 S.E.2d 202, 204 (1998).

This standard also applies to this Court's review of the trial court's decision to strike the plaintiff's evidence. Therefore, we consider the evidence in this case, and all reasonable inferences to be drawn from it, in the light most favorable to Lambert. Page v. Arnold, 227 Va. 74, 76, 314 S.E.2d 57, 58 (1984). Although the trial court chose to assume, without deciding, that Johnson's statement regarding the vehicle constituted a fraudulent misrepresentation, we must review all the evidence in order to determine whether Lambert made out a

---

promise, or misrepresentation in connection with a consumer transaction."

6

prima facie case for either common law fraud or a violation of the Consumer Protection Act.

There is no dispute that Downtown Garage is a "supplier" as that term is defined in Code § 59.1-198 or that the sale of the vehicle was a consumer transaction.  Lambert contends that Johnson's statement, in response to Lambert's question whether the vehicle had been "seriously damaged or totaled," that the vehicle was "in excellent condition" is a misrepresentation of the type contemplated in Code § 59.1-200.  Lambert further contends that this statement is also sufficient to support his claim for common law fraud.  We disagree.

Whether a supplier's, or other person's, statement is alleged to have violated a common law or statutory standard, as in this case, "'[i]t is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of an existing fact, and not the mere expression of an opinion.  The mere expression of an opinion, however strong and positive the language may be, is no fraud.'" Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 110-11, 540 S.E.2d 134, 142 (2001) (quoting Saxby v. Southern Land Co., 109 Va. 196, 198, 63 S.E. 423, 424 (1909)).  " 'We have not, however, established a bright line test to ascertain whether false representations constitute matters of opinion or statements of fact.' "  Yuzefovsky, 261 Va. at 111, 540 S.E.2d

7

at 142 (quoting Mortarino, 251 Va. at 293, 467 S.E.2d at 781).
Nonetheless, we have recognized that "[c]ommendatory statements,
trade talk, or puffing, do not constitute fraud because
statements of this nature are generally regarded as mere
expressions of opinion which cannot rightfully be relied upon,
at least where the parties deal on equal terms." Tate v. Colony
House Builders, 257 Va. 78, 84, 508 S.E.2d 597, 600 (1999);
accord Henning v. Kyle, 190 Va. 247, 252, 56 S.E.2d 67, 69
(1949).

Even in the light most favorable to Lambert, Johnson's
statement that the vehicle was in "excellent" condition cannot
be viewed as anything more than an opinion. Merely stating that
property is in excellent condition, without more, is clearly a
matter of opinion in the manner of puffing. See, e.g., Tate,
257 Va. at 84, 508 S.E.2d at 600 ("highest quality"); Henning,
190 Va. at 252, 56 S.E.2d at 69 ("good condition").
Consequently, this statement did not constitute fraud or violate
the Consumer Protection Act.

Lambert contends, however, that Johnson's statement was
also an affirmation that the vehicle had not been "seriously
damaged or totaled," when in fact Johnson knew the vehicle had

8

sustained extensive damage.[3]  The record reflects, however, that Lambert, who was knowledgeable on the subject of vehicle repairs, was fully aware that this particular vehicle had been damaged in an accident and that it had required extensive repairs to its front end, including the replacement of the radiator.  In this context, Lambert should have recognized that Johnson's statement was part of a sales pitch and merely expressed an opinion that the damage, because it was repairable, was not "serious."

Lambert further contends that, with respect to his claim for a violation of the Consumer Protection Act, Johnson had an affirmative duty to "disclose the nature and extent of the damages and repairs" to the vehicle, and that his failure to do so "constitutes a violation of the Act."  In support of this contention, Lambert relies upon an opinion of the Attorney General which states that "[b]ecause misrepresentation by omission or silence can occur at common law, it follows that

---

[3]Moreover, Lambert places great emphasis on the fact that Morgan testified that the vehicle was "totaled" and, thus, that Johnson should have advised Lambert of this fact in response to his question.  The parties agree that "totaled" is a term of art within the automobile repair industry meaning that the cost of repairing a vehicle would exceed the fair market value of the vehicle if repaired.  Viewing Morgan's testimony in full, however, it is clear that the assessment by Morgan, or his father, that the vehicle was "totaled" was based solely upon their determination that they could not afford to repair the vehicle.

misrepresentation by silence can also violate the Act. . . . Thus, failure to disclose the prior wreck or repair of a vehicle would be a form of misrepresentation." 1985-86 Op. Va. Att'y Gen. 324, 324-25. The Attorney General goes on to opine that "when the duty [to disclose] arises because of the materiality of the wreck, damage or repairs, a dealer need simply disclose to the prospective buyer . . . that the vehicle was wrecked, the extent or nature of repairs, and whether and how any repairs affect the warranty, if any." Id. at 325.

We agree that at common law "concealment, whether accomplished by word or conduct, may be the equivalent of a false representation." Spence v. Griffin, 236 Va. 21, 28, 372 S.E.2d 595, 599 (1988); accord Van Deusen v. Snead, 247 Va. 324, 328, 441 S.E.2d 207, 209 (1994). However, proof of misrepresentation by nondisclosure requires "evidence of a knowing and a deliberate decision not to disclose a material fact." Norris v. Mitchell, 255 Va. 235, 241, 495 S.E.2d 809, 812 (1998).

We hold that a violation of the Act founded upon the nondisclosure of a material fact also requires evidence of a knowing and deliberate decision not to disclose the fact. Lambert's motions for judgment do not allege nor does the evidence adduced at trial support the inference that Johnson

10

knew of any defect in the vehicle which he deliberately concealed from Lambert.

Accordingly, we hold that Lambert failed to make a prima facie case for common law fraud or for a violation of the Consumer Protection Act because his evidence failed to show that Downtown Garage, either by express statement or deliberate omission, made a misrepresentation of fact with respect to the condition of the vehicle.

## CONCLUSION

For these reasons, we will affirm the judgment of the trial court in striking Lambert's evidence at the conclusion of his case-in-chief.

Affirmed.

11