Natilya Mikhaylovna FOX Plaintiff,

v.

ENCOUNTERS INTERNATIONAL, Natasha Spivack, individually, and James M. Fox, II, individually Defendants.

No. CIV.A. S–02–1563.

United States District Court,
D. Maryland,
Northern Division.

Sept. 25, 2002.

Randall K. Miller, David M. Orta, Elliott Zenick, Brian Eric Bowcut, Washington, DC, for Plaintiff.

Ross S. Goldstein, Arnold and Porter LLP., Washington, DC, for Plaintiff/Counter–Defendant.

Thomas Peter Mann, Greenspun and Mann PC., Fairfax, VA, for Defendants/Cross–Defendant.

Paul Howard Zukerberg, Washington, DC, for Defendants/Cross–Claimants.

Albert Thomas Morris, Kirkpatrick and Lockhart LLP., Washington, DC, for Interested Parties.

### MEMORANDUM OPINION AND ORDER

SMALKIN, Chief Judge.

Plaintiff, Natilya Mikhaylovna Fox (Mrs. Fox), sued the Defendants, Encounters International ("EI"), Natasha Spivack, ("Ms. Spivack"), and James Fox, II ("Mr.Fox"), alleging seven causes of action. Against EI and Ms. Spivack individually, she alleges fraud, violation of the Virginia Consumer Protection Act ("VCPA"), misappropriation of likeness under § 8.01–40 of the Annotated Code of Virginia, and negligence. Against Mr. Fox individually, she alleges assault, battery, and intentional and/or negligent infliction of emotional distress. Before the commencement of discovery, Defendants EI and Ms. Spivack filed this motion to dismiss, or in the alternative for summary judgment, seeking the dismissal of all four claims against them. Defendant's motion was supplemented by two affidavits and one document. Plaintiff's response, however, contains an affidavit submitted by Plaintiff's counsel, Randall K. Miller, declaring pursuant to Federal Rule of Civil Procedure Rule 56(f) that the taking of discovery will establish additional facts essential to justify the party's opposition. For this reason, the Court must treat the motion as one for dismissal pursuant to Rule 12(b)(6) and will allow defendant to renew her motion for summary judgment at the close of discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 n. 6, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The issues have been well briefed by the parties, and no oral hearing is necessary. Local Rule 105.6 (D.Md.). For the reasons stated below, Defendant's Motion to Dismiss will be GRANTED as to Count II for violation of the VCPA, but will be DENIED as to the remaining counts.

### BACKGROUND

The Court recites the facts in the light most favorable to the Plaintiff. Encounters International ("EI") is a so-called "mail order bride service." It operates as a marriage bureau, arranging for women primarily of Russian and Ukranian nationality to meet and, it is hoped, marry American men. Ms. Natasha Spivack is the president and founder of EI.

American men are able to access EI's marriage service through its website "Encounter.com." A man can become a member of EI by completing the following steps: (1) complete an online profile; (2) sign a Membership agreement in which he promises that he is not currently married, and that he will be a gentleman in all matters related to EI services; (3) send two photos of himself to EI; (4) send a check or money order in the amount of $1,850 to EI; and (5) establish a petty cash account to facilitate correspondence between EI and the potential brides.

Once a member of EI, he can access a database that contains information relating

to approximately 400 women. After making selections, he contacts EI to discuss the women and to get their contact information. From there, the man is free to make contact with the women with hopes of creating a friendship, and possibly a relationship, with one of them. Eventually, he may travel to a woman's homeland to meet and/or propose to her. If he does become engaged to one of the women, he can petition the Immigration and Naturalization Service for a fiancee's visa, a so-called K–Visa, so that she can enter the United States.

The Plaintiff, Nataliya Mikhaylovna Fox, entered the United States in August 1998 pursuant to a fiancee's visa petitioned for by a Mr. Geoffrey Hermesman. Mr. Hermesman states that he met Mrs. Fox through a marriage agency in Kiev, Ukraine, known as "Wind of Wanderer." Their engagement terminated some time after she entered the United States.

At some point later, Mrs. Fox was introduced to Ms. Spivack, the president of EI. The parties dispute whether at that time Mrs. Fox became a client of EI. Either way, Ms. Spivack introduced Mrs. Fox to Mr. James M. Fox, II.

Mr. Fox had become a Member of EI sometime earlier. As a member, he met and became engaged to a woman whom he had met through EI's marriage service. His engagement to her soon terminated. At the time he met Mrs. Fox in September 1998, he was a member of EI.

Plaintiff argues that, at this time, Ms. Spivack made many false representations concerning Mr. Fox, American men generally, and her immigration status, all to induce her to marry Mr. Fox. She also alleges that Ms. Spivack failed to make certain disclosures to her that, she argues, were required under the so called Mail Order Bride Act, 8 U.S.C. § 1375. These disclosures include warnings that foreign women are vulnerable to domestic abuse, as well as information regarding plaintiff's ability to remain in the United States, even if she were to leave her husband, if she were to suffer domestic abuse.

Mr. and Mrs. Fox were married in November 1998. Plaintiff alleges that from this time until July 2000, her photo was featured on EI's website without her consent. She also alleges that, beginning in January 2000, Mr. Fox began to abuse her. After he struck her the first time, Mrs. Fox alleges that she contacted Ms. Spivack. She alleges that Ms. Spivack encouraged her to stay in the marriage, and told her that she would face deportation and financial ruin if she left Mr. Fox, statements directly in conflict with the information provided in the Mail Order Bride Act. She further alleges that Ms. Spivack made these statements to induce Mrs. Fox to stay in the marriage, so that she would not have to find him another bride as guaranteed by the service.

Later that year, three weeks after the couple had a baby, Mr. Fox assaulted Mrs. Fox with such severity that she suffered a broken bone in her chest. Mrs. Fox left the marriage and resided at a battered women's shelter in Virginia. It was at his time that she was counseled at the shelter and learned of her ability to leave the marriage permanently without facing deportation. Based on that advice, Mrs. Fox successfully petitioned the INS for employment authorization and protection from deportation pursuant to the protection guaranteed to battered women aliens under 8 U.S.C. § 1154.

Mr. Fox then attempted to divorce Mrs. Fox by traveling to Haiti to procure a divorce decree, which Plaintiff argues is not valid. Mr. Fox subsequently married another Russian bride in December 2001.

Based on the above facts, Plaintiff alleges the following causes of action against EI and Ms. Spivack: (1) fraud; (2) viola-

tion of Virginia's Consumer Protection Act; (3) misappropriation of likeness; and (4) negligence. This issue is before the Court on defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Based on the following standard, defendant's motion will be GRANTED in part, and DENIED in part.

## STANDARD FOR MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When ruling on a motion to dismiss under 12(b)(6), a court must accept the allegations contained in the complaint as true. *See DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir.1999). The Court is not, however, "bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994) (reiterating that a plaintiff's legal conclusions merit no deference in deciding a motion to dismiss). The issue that remains then, is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims made. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

With due consideration given to the complaint, it appears beyond doubt that Mrs. Fox can prove no set of facts sufficient to support her entire VCPA claim, nor could she prove part of her fraud claim. Accordingly, the VCPA claim will be DISMISSED. Her fraud claim will be limited in scope, and defendant's motion on the remaining two claims, misappropria-

tion of likeness and negligence, will be DENIED.

## *ANALYSIS*

### I. Fraud

Virginia law recognizes three types of fraud: actual and constructive fraud and concealment. Plaintiff's complaint asserts fraud based on both affirmative misrepresentations allegedly made by the defendant and alleged material omissions made by the defendant. The Court will discuss them each separately.

### A. Actual Fraud

■ To state a valid claim for actual fraud under Virginia law, the plaintiff must prove the following elements by clear and convincing evidence: (i) a false representation; (ii) of a material fact; (iii) made intentionally and knowingly; (iv) with the intent to mislead; and (v) resulting damage to the misled party. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir.1999) (applying Virginia law); *Motor City Bagels, L.L.C. v. American Bagel Co.*, 50 F.Supp.2d 460, 473 (D.Md.1999) (same). To be actionable at common law in Virginia, it is well-settled that the misrepresentation must be of an existing fact, and not the mere expression of an opinion. *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 712, 553 S.E.2d 714, 717 (2001).

Defendant argues that as a matter of law most of the statements alleged by Plaintiff as actual fraud are not actionable because they do not constitute "existing facts under Virginia law, but mere expressions of opinion." Second Supplemental Mem. at 3. On the other hand, plaintiff argues that Virginia law recognizes an exception to the rule that statements be of existing or past fact to be actionable. The exception, plaintiff argues, allows the defendant's state of mind to act as the fact,

and accordingly allows a fraud claim to exist when the defendant implies that she knows of nothing that will make the fulfillment of her prediction or promise impossible or improbable. *Motor City Bagels*, 50 F.Supp.2d at 473 (quoting Restatement (Second) of Torts § 525 cmt. f (1977)). This exception, however, is generally employed when the defendant is making a prediction about something over which she has control, or at least about something over which another person does not have exclusive and unfettered control. *See id.* (allowing the defendant's state of mind to act as the fact when predicting estimated start-up expenses of a franchise); *Patrick v. Summers*, 235 Va. 452, 454–55, 369 S.E.2d 162, 164 (1988) (applying the exception to defendant's promise to perform in the future; determining exception not met for lack of clear and cogent evidence of defendant's intent not to perform).

In contrast, the defendant in this case expressed an opinion as to how another person would act or what another person would do in the future. Accordingly, the exception does not apply to the facts at hand. For this reason, the Court finds that, for the majority of the pleaded statements, plaintiff fails to state a claim for which relief can be granted. Two factual allegations, however, do state a valid claim and will not be dismissed.

## 1. The Alleged Affirmative Representations

### a. Statements regarding Mr. Fox's suitability for marriage

■ Plaintiff asserts that the following statements were made regarding Mr. Fox's suitability for marriage: (1) he would make a good husband; (2) he would provide her a safe and comfortable life; and (3) he was a caring person.

The Court is convinced that the statements made in regard to Mr. Fox's suitability for marriage are mere opinions and

are not actionable as fraud. Virginia law insists that statements be of existing or past fact to be actionable, because a person cannot rightfully rely on mere expressions of opinion. *Lambert v. Downtown Garage, Inc.*, 262 Va. at 713, 553 S.E.2d at 717. Based on the established law of Virginia, Mrs. Fox could not reasonably have relied on such opinions, because it is quite impossible to verify what constitutes a "good" husband or a "caring" person.

Similarly, it was unreasonable to rely on one person's promise regarding what another person, over whom the first exercises no control, would do in the future. When the possibility of an occurrence is exclusively in the control of another, in this case, Mr. Fox's control, Ms. Spivack's state of mind cannot act as the fact to fit the exception, because she could not possibly have known if Mr. Fox intended to be a caring or a good husband in the future. There are no *facts* pleaded from which Ms. Spivack could have derived any factual data in that regard. *See* F.R.C.P. 9(a). Thus, as a matter of law, the statements are not actionable as fraud, and the claim is *dismissed*, as to those statements.

### b. Statements regarding American culture and American men

■ Plaintiff asserts that the following statements were made regarding American culture: (1) almost all men in the United States insist upon a prenuptial agreement before marriage; (2) all American men have tendencies toward anger and occasionally physical anger such as shoving or grabbing; (3) such tendencies are rarely serious or dangerous; (4) such tendencies must be tolerated in American culture; and (5) the tendencies would dissipate over time as Mr. Fox became more secure in the marriage.

By similar reasoning, the Court is convinced that these statements are also mere

opinions on which Mrs. Fox could not justifiably rely. It is unreasonable as a matter of law for someone to have relied to her detriment on a statement made by the defendant regarding the nature and conduct of almost all men in the United States. It is similarly unreasonable to rely on defendant's predictions regarding Mrs. Fox's marital relationship and what would occur in the future between her and her husband. Further, even if it were verifiable that almost all men in the United States use prenuptial agreements, the plaintiff fails to show any connection between that and the physical abuse she suffered. For these reasons, the preceding statements are not actionable as fraud.

### c. Encouragement of Mrs. Fox to stay in the marriage

█ Plaintiff asserts that, even after she suffered some physical abuse, defendant advised her to stay in the marriage. The advice given to Mrs. Fox to stay in the marriage is simply not actionable as fraud. Ms. Spivak owns a match-making service; she does not purport to be a marriage counselor. Additionally, any business or legal relationship that arguably existed between the two of them terminated at the marriage. If Mrs. Fox chose to continue to discuss her marriage with the defendant, and in the process obtained bad advice regarding her marriage, she did so at her own peril; she cannot now hold her responsible for fraud based on advice. Again, this encouragement is simply not actionable as fraud, as it is not a statement of fact.

### d. Statement made publicly that domestic violence does not exist in Ms. Spivak's organization

█ Plaintiff alleges that Ms. Spivak stated that "domestic violence does not exist in my organization" on national television on or about April 29, 2000. Compl. at ¶ 55. This statement was made on na-

tional television and not directly to Mrs. Fox. Further, Plaintiff fails to allege any facts indicating how she relied on the statement to her detriment, or how it contributed to her decision to stay in the marriage. Plaintiff argues that this somehow suggests that screening for domestic violence is done within the organization. *Id.* The Court cannot see how such a suggestion, which arguably does not exist, caused Mrs. Fox to act to her detriment, because she had already married Mr. Fox at the time she became aware of the statement. In fact, Mrs. Fox alleges that she had already been struck by the defendant by that time, evidencing her actual knowledge that the statement was false, and then on which she could not reasonably rely. Because Plaintiff failed to successfully allege how she justifiably relied on this statement to her detriment, this statement is not actionable as fraud.

### e. Statements made between January and March 2000 regarding deportation and financial ruin if Mrs. Fox left the marriage

█ Plaintiff asserts that defendant made the following statements to induce Mrs. Fox to continue in her marriage to Mr. Fox: (1) she must stay with Mr. Fox in order to avoid deportation and other adverse immigration consequences, and (2) leaving Mr. Fox would bring her financial ruin. The second statement regarding financial ruin is, again, simply an opinion. Mrs. Fox could not justifiably rely on Ms. Spivack's prediction on what would occur financially between her and her husband if she were to leave him. This is basically a prediction regarding the future over which Ms. Spivack had no control, and is not actionable as fraud.

█ Standing alone, the first statement, regarding the implications of the immigration laws, appear also to be a legal opinion

from someone not a lawyer, and not actionable. Deportation and other immigration issues are exclusively under the control of the United States Congress and the Immigration and Naturalization Service. It would appear unreasonable for Mrs. Fox to rely on legal assertions made by a non-lawyer about immigration laws that are unquestionably fraught with uncertainty.

The statements regarding immigration laws, however, do not stand alone in this case. Plaintiff argues that the Mail Order Bride Act subjects the defendant to liability for failure to disclose certain information mandated by the Act. The information directly conflicts with this statement allegedly made by the defendant. Thus, if the plaintiff can prove that defendant was obligated by federal law to disclose the deportation information, by extension, it follows that she had an obligation to do so truthfully. For this reason, the statements regarding deportation made to Mrs. Fox between January and April 2000 state a valid claim for actual fraud and will not be dismissed.

## B. Non–Disclosure or Concealment

Virginia law recognizes fraud by omission, or "concealment." *Bank of Montreal*, 193 F.3d at 827. Proof that a party's willfull nondisclouire of a material fact, that she knows is unknown to the other party, may constitute actual fraud, *Norris v. Mitchell*, 255 Va. 235, 240, 495 S.E.2d 809, 812 (1998); *Allen Realty Corp. v. Holbert*, 227 Va. 441, 450, 318 S.E.2d 592, 597 (1984). Silence does not constitute concealment in the absence of a duty to disclose. *Bank of Montreal*, 193 F.3d at 827.

Additionally, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable. *See Norris v. Mitchell*, 255 Va. 235, 240–41, 495 S.E.2d 809, 812 (1998) (affirming the dismissal of the fraud case based on finding that sellers had neither the affirmative duty to make a statement nor the requisite intent to conceal the facts).

Plaintiff alleges that Ms. Spivack's duty to make certain disclosures to her arose in one, or both, of two ways. First, Plaintiff alleges that Ms. Spivack had a statutory duty under the Mail Order Bride Act to make certain disclosures to her regarding domestic violence and the immigration laws. Second, she alleges that Ms. Spivack had a fiduciary duty to make those and many other disclosures to her based on their relationship.

### 1. Statutory Duty

■ Defendant argues that a cause of action cannot lie because she had no statutory duty under the Mail Order Bride Act, 8 U.S.C. § 1375, to make disclosures concerning domestic violence and immigration laws, as the statute did not apply to her at the time the disclosures allegedly should have been made. Plaintiff argues that, under the Mail Order Bride Act, defendant had an affirmative duty to make such disclosures, and her failure to do so constituted concealment and is thus, actionable as fraud.

The existence of a duty is purely a legal question. *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 105, 540 S.E.2d 134, 139 (2001); *Burns v. Johnson*, 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995). As a matter of law, the Court finds that the Mail Order Bride Act did not apply to Ms. Spivack at the time the disclosures were allegedly required to be made, and thus, Mrs. Fox has failed to plead a statutory duty to support her cause of action for concealment.

The Mail Order Bride Act requires that each international matchmaking organization doing business in the United States shall disseminate to recruits, upon recruitment, such immigration and naturalization information as the Immi-

gration and Nationalization Service deems appropriate, in the recruit's native language, including information regrading conditional permanent residence status and the battered spouse waiver under such status, permanent resident status, marriage fraud penalties, the unregulated nature of the business engaged in by such organizations, and the study required under subsection(c) of this section.

8 U.S.C. § 1375(b)(1) (1999).

The Act further defines an "international matchmaking agency" as

A corporation, partnership, business, or other legal entity, whether or not organized under the laws of the United States or any State, that does business in the United States and for profit offers to United States citizens or aliens lawfully admitted for permanent residence, dating, matrimonial, or social referral services to nonresident noncitizens, by-

(i) an exchange of names, telephone numbers, addresses, or statistics;

(ii) selection of photographs; or

(iii) a social environment provided by the organization in a country other than the United States.

*Id.* at § 1375(e)(1) (emphasis added).

The term "recruit" is defined as a noncitizen, nonresident person, recruited by the international matchmaking organization for the purpose of providing dating, matrimonial, or social referral services to United States citizens or aliens lawfully admitted for permanent residence. *Id.* at § 1375(c)(2) (emphasis added).

Defendants argue that Plaintiff failed to state a claim for which relief can be granted because the statute did not apply to them and, thus, no statutory duty existed at the time to make the required disclosures. Defendants argue that the Act did not apply because (1) they were not acting as an "international matchmaking agency"

with respect to the Foxes and (2) Mrs. Fox was not a "recruit" as defined by the Act.

The applicability of the statute turns on whether Mrs. Fox was a nonresident at the time she came into contact with Ms. Spivack, because, if not, she was not a "recruit" at the time, and the statute does not apply to Ms. Spivack's dealings with her.

The role of the Court is to apply the statute as written, while bearing in mind the legislative will expressed in the statute. *United States v. Murphy,* 35 F.3d 143, 145 (4th Cir.1994). Words should be given their common usage and the Court is not free to read into the language words that are not there. *Id.* Further, if the language is plain and admits of no more than one meaning, the duty of interpretation does not arise and the inquiry terminates. *Id.* (citing *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

The Court is convinced that the meaning of nonresident in the statutory language is plain and admits of no more than one meaning. *See, e.g., Patten v. United States,* 116 F.3d 1029 (4th Cir.1997). Under the statute, the duty to make the mandated disclosures only arises when the agency is recruiting nonresident non citizens. Mrs. Fox does not allege that she came to the United States via a fiancee's visa procured by Mr. Fox, to whom she was introduced by EI or Ms. Spivack after her entry into the United States to marry another American. Instead she concedes that "at the time of the first meeting between Ms. Spivack and Ms. Fox, Ms. Fox was present in the State of Maryland and lawfully present in the United States under a 'K–Visa,' which was set to expire in November 1998." Compl. at ¶ 42. Thus, she was residing in the United States when she met Ms. Spivack and was not a nonresident. Congress clearly intended

that the required disclosures be made by the agency that was instrumental in introducing a "mail order bride" to her future husband and bringing her into the United States. Congress could not have intended that every person who made contact with her subsequent to her arrival and residence in the United States make the required disclosures. Accordingly, any disclosures mandated by the Mail Order Bride Act should have been made by the agency through which she arrived in the United States. Consequently, no affirmative statutory duty exists to support a claim for concealment, and under that theory the claim is dismissed.

### 2. Fiduciary Duty

 Plaintiff alleges that, at the very least, a fiduciary relationship existed between the parties, giving rise to the duty to make the disclosures referred to in the Act, and others, including *inter alia*, the failure to perform background checks on the American men. Under Virginia law, a fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 446, 318 S.E.2d 592, 595 (1984). Based on this duty, the fiduciary is obligated to tell his principal about "anything 'which might affect the principal's decision whether or how to act.'" *Id.* (quoting *Owen v. Shelton*, 221 Va. 1051, 1054, 277 S.E.2d 189, 191 (1981)) (holding that real estate agent violated his fiduciary duty by closing a sale without disclosing to the sellers that the buyers reserved the right

to litigate the sellers' entitlement to interest).

 The Court finds that Plaintiff alleged sufficient facts to support her claim that a fiduciary relationship existed between her and the defendants. Plaintiff alleges that "by her statements and actions, Spivack induced Ms. Fox to believe she was acting in Ms. Fox's best interests." Compl. at ¶ 64. She alleges that Ms. Spivack "agreed to counsel her and advise her in regards to the prenuptial agreement." Compl. at ¶ 41. Further, she alleges that Ms. Spivack was holding herself out as having a fiduciary relationship with Mrs. Fox. Compl. at ¶ 46. The Court is convinced that she plaintiff sufficiently pleaded the existence of a fiduciary duty. Additionally, she has successfully pleaded alleged omissions that relate to things that would affect her decision to act or how to act. *Id.*

Accordingly, as to Count 1 for fraud, the Court will not dismiss the count entirely, but will severely narrow its scope to two factual allegations: (1) the alleged actual fraud based on the false misrepresentations regarding deportation made to Mrs. Fox between January and April 2000 and (2) the alleged omissions made in violation of a fiduciary duty to disclose them. Further, the Court will reserve judgment on whether the other elements for fraud are met, i.e. intent and justifiable reliance, until further discovery is conducted.[1]

### C. Statute of Limitations for Fraud Claim

 The Court has determined that only (1) the alleged concealment of certain

---

1. The Court does not discuss the applicability of constructive fraud to the facts, as it differs from actual fraud only in that the misrepresentation is made negligently or innocently, instead of with the intent to mislead. *ITT Hartford Group, Inc. v. Va. Fin. Assoc. Inc.*, 258 Va. 193, 203, 520 S.E.2d 355, 361 (1999). Finding that Plaintiff sufficiently alleged that Ms. Spivack acted with the intent to mislead, this cause of action is irrelevant to this set of facts.

information that induced her to marry Mr. Fox, which occurred sometime between September and November 1998 and (2) the affirmative misrepresentation of immigration information, which occurred sometime between January and April 2000, survives defendant's motion to dismiss. Thus, the Court will discuss the applicability of the statute of limitations to only those factual allegations.

Defendant argues that Virginia's two-year statute of limitations applies, and thus, the entire fraud claim is time barred. As the plaintiff argues, however, this assertion is misplaced. In its Memorandum Opinion dated July 19, 2002, this Court ruled that Plaintiff's causes of action are governed by the substantive law of Virginia. This ruling does not, however, declare that Virginia's procedural law applies as well.

In tort actions, such as Plaintiff's, Maryland adheres to the rule that while the law of another state may govern substantive matters, the law of the forum state governs procedural matters. *Sokolowski v. Flanzer,* 769 F.2d 975 (4th Cir.1985); *Sherwin–Williams Co. v. Artra Group Inc.,* 125 F.Supp.2d 739 (D.Md.2001). Under Maryland law, statutes of limitations, with only one exception that is not relevant here, are procedural. *Sokolowski,* 769 F.2d at 978. Accordingly, Maryland law governs whether the fraud claim is time barred.

By Maryland statute, a civil action must be filed within three years of the date when the cause of action accrues. Md. Code Ann., Cts. & Jud. Proc. § 5–101; *see also Bragunier Masonry Contractors, Inc. v. Catholic University of America,* 368 Md. 608, 796 A.2d 744 (2002). Clearly Plaintiff's fraud claims for statements made, or not made, between January and April 2000 are not time barred, as this suit was filed less that three years later, on April 30, 2002. The only issue then, is whether the claim of alleged concealment in 1998 is time barred.

Ordinarily in a tort action, the statute of limitations begins to accrue on the date of the wrong. *Murphy v. Merzbacher,* 346 Md. 525, 697 A.2d 861 (1997). This is so because Maryland courts assume that a potential tort plaintiff is immediately aware that she has been wronged and is aware that the statute of limitations is running. *Id.* The nature of some torts, however, undermines this strict rule. For this reason, the Maryland Court of Appeals recognizes that when the acts of the defendant or other difficulties of detection leave a plaintiff "blamelessly ignorant" of the facts and circumstances legally entitling her to relief, the statute does not begin to run against her, unless she knows, or through the exercise of due diligence should know, of the wrong. *Id.* (citing *Poffenberger v. Risser,* 290 Md. 631, 637, 431 A.2d 677(1981)). *See also LaSalle Bank Nat. Ass'n v. Lehman Bros. Holdings,* 188 F.Supp.2d 595, 598 (D.Md.2002) (Maryland law).

Mrs. Fox alleges that she did not become aware of her legal rights under the United States immigration laws until July 2000, when she went to a battered women's shelter after the physical abuse by Mr. Fox. This allegation is best evidenced by her decision to remain with Mr. Fox after he struck her the first time. She alleges that, had she known that she could leave him without facing deportation, she would have. The Court finds that this fact alone supports her contention that her action accrued during the limitations period sufficiently to survive a motion to dismiss.

Defendant does not directly dispute this fact, although she does argue that "Mrs. Fox's claim that she was unaware that she could have left Mr. Fox without jeopardizing her immigration status is belied by the fact that she left [her former fiance'], and

yet remained in the United States." Reply Mem. at 8. Taking the factual allegations as true, Mrs. Fox successfully pleaded that she did not become aware of the concealment until well within the three-year limitations period, and that due to Ms. Spivack's actions, she could not reasonably have become aware within the limitations period. The Court notes that further discovery should bring more light to this issue, because certainly if Wind of Wanderer gave her the required disclosures upon entering the United States, then clearly the action accrued immediately, and would be time-barred.

## II. Violation of the Virginia Consumer Protection Act

 Assuming that the Virginia Consumer Protection Act ("VCPA") even applies to these facts, Plaintiff alleges that defendant violated the Act, which prohibits "using any...deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va.Code Ann. § 59.1–204(A). In her Complaint, Plaintiff alleges that the following series of statements constituted a violation of the VCPA: (1) false statements and material omissions regarding the lack of background checks to protect against violence toward women; (2) warnings allegedly required under the Mail Order Bride Act; and (3) false and/or misleading statements made to induce Mrs. Fox to disregard her obligations under the immigration laws of the United States. Mrs. Fox fails to allege how these statements or omissions induced her to enter into the consumer transaction, i.e. marry Mr. Fox, and accordingly, fail to state a claim for which relief can be granted.

First, any and all statements Plaintiff relies on as violating the VCPA that mirror those discussed in the fraud section of this Memorandum are similarly precluded under the VCPA. The VCPA mandates, just as in a fraud claim, that the state-

ments be "of an existing fact, and not the mere expression of opinion." *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 712, 553 S.E.2d 714, 717 (2001) ("Merely stating that property is in 'excellent' condition cannot be viewed as anything more than an opinion."). Thus, any and all statements that Plaintiff relies upon to make her VCPA claim that mirror those discussed in the fraud section of this Memorandum are similarly dismissed as part of the VCPA claim.

The rest of Plaintiff's allegations fail to meet the requirement that the deception be "in connection with" the consumer transaction, i.e. the marriage. The VCPA was designed to attack misrepresentation used as an inducement to contract. Edward P. Nolde, *Consumer Protection Law*, 27 U. Rich. L.Rev. 725, 726 (1993). Plaintiff's own motion states "here, there are genuine issues of material fact as to whether a purveyor of services induced a person into participating in a transaction...." Supplemental Resp. at 13 (emphasis added).

As to the first statements regarding "background checks," Plaintiff does not allege that Ms. Spivack falsely informed her that background checks were done, nor does she allege that she asked Ms. Spivack if they were conducted. In fact, Plaintiff's Complaint recites that EI's website states that potential grooms may use EI's service if only they "appear sane, and not be in prison or parole." Compl. at ¶ 22. Thus, she cannot argue that anything Ms. Spivack said or didn't say in relation to background checks being conducted induced her to enter into the marriage, especially where information was available to the contrary. Mrs. Fox has failed to plead facts that would support her claim that Ms. Spivack's failure to disclose that background checks were not conducted induced her to enter the marriage. Clearly if Mrs.

Fox relied on the existence of background checks in choosing her future husband, she would have at least asked if they were performed.

Plaintiff can similarly not show that the failure to disclose information associated with the Mail Order Bride Act induced her to marry Mr. Fox. Unless her fiancee's visa was fraudulently issued, Mrs. Fox was planning to marry another man when she entered the United States. This clearly belies any claim that Mrs. Fox could conceivably make that defendant's failure to give her the warnings associated with the Mail Order Bride Act, or any other warnings of domestic violence, induced her to marry Mr. Fox. The Mail Order Bride Act warnings are not specific as to Mr. Fox. She intended to marry an American citizen in August 1998 and, thus, cannot logically argue that the failure to give such warnings induced her to marry another American citizen just several months later. Consequently, this alleged non-disclosure was not made in connection with the consumer transaction, or marriage, and is not actionable.

Under similar reasoning, the statements made to her two years after her marriage to Mr. Fox could not possibly have induced her to marry Mr. Fox. The VCPA was designed to combat misrepresentations made to induce another to contract. These statements were made well after the consummation of their marriage, and are not actionable.

The last series of statements that Plaintiff relies on for her VCPA claim are statements allegedly made to induce her to stay in the United States and to "disregard [her] obligations under the immigration laws of the United States." Compl. at ¶ 84. Plaintiff fails to allege how these statements induced her to marry Mr. Fox specifically. Plaintiff clearly wanted to marry a United States citizen in hopes of becoming a permanent resident of the United States, otherwise she would not have engaged in the solicitation efforts of any of the match-making organizations to begin with. Plaintiff cannot rely on these statements as fraudulent misrepresentations as they are either true or mere opinions, and are not actionable under the VCPA.

For the above reasons, Plaintiff has failed to state a claim for which relief can be granted under the VCPA, and Count II of the Complaint is dismissed.

### III. Misappropriation of Likeness under Virginia Code § 8.01–40

Plaintiff brought Count III of the complaint under § 8.01–40(A) of the Virginia Code, which provides:

> Any person whose name, portrait, or picture is used without having first obtained the written consent of such person...for advertising purpose or for the purpose of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue to recover damages for any injuries sustained by reason of such use.

Va.Code Ann. § 8.01–40.

Defendant urges this Court to dismiss this count, arguing that Plaintiff failed to state a claim for which relief can be granted because (1) the photo was used to depict a public interest, which is an exception under the Code to the written consent requirement and (2) consent was given when she posed for the photographs. This Court denies the defendant's motion to dismiss this count because as a matter of law, the use of plaintiff's photo does not meet the public interest exception and defendant offers no evidence of written consent as defined by the statute.

Although the statute requires that before using any name, photo, or portrait, a person must get written consent, matters of "public interest" and "newsworthy" items are excepted from the consent requirement. *Williams v. Newsweek*, 63 F.Supp.2d 734, 736 (1999); *WJLA–TV v. Levin*, 264 Va. 140, 161, 564 S.E.2d 383, 395 (2002). The exception expressly does not include items used for advertising purposes or in trade. *Williams*, 63 F.Supp.2d at 736. There is no question that "Encounter.com" is an engine used to advertise EI's service to introduce Russian women to American men for marriage and permanent residency. No halfway plausible argument can be made otherwise.

Defendant argues that "there is a great public interest in romance, marriage and the means and methods of dating prospective spouses." Second Supplemental Motion at 7. The Court is convinced that the advertisement of match-making services is not in the public interest, as the exception intended it to be. To be sure, the following subjects have been found to meet the "public interest" exception; a broadcast about a physician accused of sexually assaulting his patients, *WJLA–TV*, 264 Va. at 161, 564 S.E.2d at 395; a book relating a true story about a priest who attempted to fight terrorism and gangsterism on the New York waterfront, *Dallesandro v. Henry Holt & Co.*, 4 A.D.2d 470, 166 N.Y.S.2d 805, 807 (1957); and a magazine article discussing research into caffeine-aided fertilization, *Finger v. Omni Publ'ns Int'l*, 77 N.Y.2d 138, 564 N.Y.S.2d 1014, 1017, 566 N.E.2d 141, 143 (1990). Clearly and as a matter of law, defendant's argument fails because EI's website advertising a marriage service does not meet the "public interest" exception.

Secondly, defendant argues that Mrs. Fox's posing for pictures is "conclusive evidence of knowledge and consent." Second Supplementary Motion at 8. Defendant plainly ignores the express wording of the statute that requires "written" consent. Defendant has produced no evidence that Mrs. Fox signed any permission form giving her consent. In its first Motion to Dismiss dated May 31, 2002, defendant attached a form signed by Mr. James Fox on September 26, 1998 giving EI permission to use his name, the picture of himself with his wife/fiancee' and his testimonial on the internet and in other advertising. Motion to Dismiss at Ex. 3. This form is not, however, signed by the Plaintiff and was signed by Mr. Fox before the couple was married. Mrs. Fox alleges that she never gave Mr. Fox permission to sign the document on her behalf, and thus states a valid claim for relief under the statute. Defendant's motion to dismiss Count III is denied.

## IV. Negligence

Plaintiff alleges that both a statutory and common law fiduciary duty existed between the parties under which Ms. Spivack owed her a duty of care to protect her from Mr. Fox. Defendant sets forth several theories to support her assertion that Plaintiff has failed to state a claim for which relief can be granted under negligence. To summarize, she asserts under several theories that (1) no duty exists to support a claim of negligence and (2) any negligence claim is barred by the statute of limitations.

Firstly, the factual assertions that give rise to Plaintiff's claim of negligence are similar to those advanced in her claim of fraud. Under Maryland law, both claims enjoy a three-year statute of limitation period, which accrues when she knew or with reasonable diligence should have known of the wrong. *Frederick Road v. Brown & Sturm*, 360 Md. 76, 756 A.2d 963 (2000). The Court believes that the same discussion on the statute of limitation ar-

gument discussed in the fraud claim applies here as well, and finds that the negligence claim is similarly not time barred.

As for Plaintiff's substantive allegation of negligence, to survive defendant's motion to dismiss, she must plead the existence of a legal duty, violation of that duty, and proximate causation that results in injury. *Delk v. Columbia/HCA Heatlhcare Corp.,* 259 Va. 125, 132, 523 S.E.2d 826, 830 (2000). The existence of a duty is purely a question of law. *Yuzefovsky v. St. John's Wood Apartments,* 261 Va. 97, 105, 540 S.E.2d 134, 139 (2001); *Burns v. Johnson,* 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995).

### A. Statutory Duty

As discussed *supra,* the Court is convinced that under the very specific set of facts in front of the Court, EI and Ms. Spivack cannot allege a statutory duty to make initial disclosures mandated by the Mail Order Bride Act because at the time they became acquainted, Mrs. Fox was residing in the United States on a fiancee's visa. Because Plaintiff fails to prove a violation of the statute, Plaintiff's allegation of negligence *per se* based on that violation is not actionable. The Court finds that Plaintiff cannot support her claim of negligence on this theory alone. This, however, does not preclude the Court's finding of a common law duty between Ms. Spivack and Mrs. Fox, and a subsequent breach of that duty based on other conduct by the defendant.

### B. Common Law Duty

Mrs. Fox alleges that Ms. Spivack owed her a special or fiduciary duty to engage in certain conduct that would have protected her from further violence by Mr. Fox, and that the breach of this duty caused her to remain in the relationship, which ultimately led to her being severely abused by Mr. Fox. As a matter of law, the Court is convinced that Plaintiff has suffi-

ciently pleaded the necessary facts to generate an issue of whether a fiduciary relationship existed between the parties, and denies defendant's motion to dismiss the negligence claim.

Under Virginia law, a fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *Allen Realty Corp. v. Holbert,* 227 Va. 441, 446, 318 S.E.2d 592, 595 (1984) (quoting *H–B P'ship v. Wimmer,* 220 Va. 176, 179, 257 S.E.2d 770, 773 (1979)). Plaintiff alleges that Ms. Spivack promised to take care of her and induced her to believe that she was acting in Mrs. Fox's best interest. Compl. at ¶ 64. In response, Ms. Spivack argues that Mrs. Fox was not her client and was just her friend. In direct contrast to her argument, however, Mrs. Fox was featured on EI's website as a client and she regularly attended socials through EI. Compl. at ¶¶ 52, 69, 91. Based on these allegations, Plaintiff has successfully pleaded a fiduciary duty between them and the claim will not be dismissed.

Even though Plaintiff has successfully pleaded a fiduciary duty, ordinarily a person does not have a duty to protect another from the conduct of third persons. *Delk,* 259 Va. at 132, 523 S.E.2d at 830. The general rule, however, does not apply when a special relationship exists between the defendant and either the plaintiff or the third person. *Id.; A.H. v. Rockingham Publishing Co. Inc.,* 255 Va. 216, 219, 495 S.E.2d 482, 484 (1998). The special relationship may be one that has been recognized as a matter of law, such as those between a common carrier and passenger, a business proprietor and an invitee, and an innkeeper and his guest, *A.H.,* 255 Va. at 219, 495 S.E.2d at 484, or it may arise from the factual circumstances of a

case. *Yuzefovsky,* 261 Va. at 107, 540 S.E.2d at 139.

■■■■■ In determining whether a tort duty exists for another's actions, the likelihood of injury, the magnitude of burden of guarding against it, and the consequences of placing that burden on the defendant must be taken into account. *Id.; Gulf Reston, Inc. v. Rogers,* 215 Va. 155, 159, 207 S.E.2d 841, 845 (1974). The issue here is simply whether Plaintiff's factual allegations are sufficient, as a matter of law, to establish that Ms. Spivack had a duty of care to protect Mrs. Fox from the ultimate attack by Mr. Fox such that a jury could find her liable for those injuries. *Thompson v. Skate America, Inc.,* 261 Va. 121, 128, 540 S.E.2d 123, 127 (2001). This Court finds that Plaintiff has successfully alleged such a duty.

This Court is convinced that the alleged facts create a special relationship between Ms. Spivack and Mrs. Fox that gave rise to a duty of care. Admittedly, no case law exists unequivocally recognizing that such duty exists in this factual situation. The Court, however, finds that Ms. Spivack should have known that Mrs. Fox would not leave her abusive husband if she faced deportation. With that knowledge, it is alleged that she blatantly lied to the Plaintiff about the consequences of leaving her husband while possessing knowledge precisely to the contrary. The Court is convinced that under the circumstances Mrs. Fox believed that Ms. Spivack was acting in her best interest and was owed a duty of due care and good faith to act accordingly.

Ms. Spivack owns and operates a marriage bureau. The women she introduces to her male clients are foreign and often barely speak the English language. Ms. Spivack should also know that they are vulnerable to the domestic violence that besets too many American women today.

The United States Congress knows that such women are particularly vulnerable to such abuse and noted in 1998, by passing the Mail Order Bride Act, that "anecdotal evidence suggests that mail-order brides find themselves in abusive relationships.... Many mail-order brides come to the United States unaware or ignorant of United States immigration law. Mail-order brides who are battered often think that if they flee an abusive marriage, they will be deported." 8 U.S.C. § 1375(a)(2)-(4).

As discussed previously, the Mail Order Bride Act mandates that international match-making organizations disclose information that negates the misconceptions frequently held by the women regarding domestic violence and deportation. Although this Court has found that the Act did not specifically subject Ms. Spivack to fraud liability for concealing the information in the Act, the existence of the Act charges Mrs. Spivack with the knowledge and notice of the information contained in the Act. On that basis, a reasonable jury could find that Ms. Spivack breached her fiduciary duty by failing to disclose this information, as it may constitute information that may have affected her decision "whether or how to act." *Allen Realty Corp.,* 227 Va. at 446, 318 S.E.2d at 595. Thus, she cannot now argue that her statements made in direct conflict with the Act did not breach her fiduciary duty owed to Mrs. Fox.

Finding that a special relationship existed, the Court must still consider whether the danger of a plaintiff's injury from such conduct was known to the defendant or was reasonably foreseeable. *A.H.,* 255 Va. at 220, 495 S.E.2d at 485. The Court is convinced that Plaintiff has sufficiently plead this element as well. Again, the Mail Order Bride Act charges Ms. Spivack with the knowledge and notice that these

brides are often the victims of domestic violence. The risk of such violence is sufficiently foreseeable that Congress has attempted to protect these women by enacting the statute. In addition, Mrs. Fox told Ms. Spivack that she had been struck by Mr. Fox, and thus Ms. Spivack had specific knowledge that Mr. Fox had engaged in domestic violence, again satisfying the necessary degree of foreseeability. *Thompson*, 261 Va. at 130, 540 S.E.2d at 128. The general risk of domestic violence coupled with her specific knowledge of Mr. Fox's assault on her in January 2000, clearly state a cause of action for the duty element of negligence, and thus, defendant's motion to dismiss for failure to state a claim is denied.

Plaintiff has sufficiently alleged a duty to establish a negligence claim. Additionally, Plaintiff has alleged behavior by the defendant that breached that duty, which caused her to stay in an abusive relationship, eventually leading to serious injury. Plaintiff has successfully pleaded the four elements of negligence, and defendant's motion to dismiss Count IV is denied.

### CONCLUSION

Taking the factual allegations as true, the court finds that Plaintiff has sufficiently pleaded a limited claim of fraud, misappropriation of likeness, and negligence, and defendant's motion to dismiss on those counts is DENIED. Finding that Plaintiff has failed to state a claim for violation of the Virginia Consumer Protection Act, defendant's motion as to that count is GRANTED.